## FORBES *against* MARSH and another.

*A* and *B*, on the 11th of *June*, entered into a written agreement, by which *B* agreed to pay *A*, the sum of 200 dollars, on the 1st of *August*, and *A* agreed, upon the performance by *B*, to sell and deliver to *B*, a certain coach then in his possession ; and *B* was to give *A* an indorsed note for said sum, with interest from the date of the agreement.   Under this agreement, *B* held possession of the coach and used it in his business, until the 1st of *August*, when, *B* having paid no part of said sum, *A* refused to permit him to use the coach or retain possession of it any longer, without a new arrangement.   It was then agreed between them, that *B* might continue to use the coach in his business, no particular time being limited for such use, and that *B* should pay *A* 30 dollars therefor, which *B* paid immediately.   On the 22d of *November*,

while the coach was so in the possession and use of *B*, it was attached and taken by *C*, a creditor of *B*, as *B's* property, and afterwards receipted by *B* and another. In trover brought by *A* against *C*, for such taking, it was held, 1. that the agreement of the 11th of *June* was not to be considered as a sale of the coach from *A* to *B*, but only an agreement for the sale thereof thereafter, and *B* did not become the owner thereof, by virtue of the terms of such agreement; nor, in the absence of any other sale, or of fraud, or a design to conceal the property from *B's* creditors, or to obtain a false credit for him, or of *A's* holding out *B* as owner, or permitting *B* so to hold himself out, was it liable to *B's* creditors; 2. that the agreement of the 1st of *August*, being made *bona fide*, was valid, not only as between the parties, but as against attaching creditors; 3. that neither the mere lease of the coach to *B* by *A*, nor the delivery of it to *B* on the receipt, by the officer, after the attachment, precluded *A* from sustaining trover; but 4. that, as the lease was at the pleasure of the parties, *A* could not maintain trover, unless he had, previous to the attachment, demanded the coach, or given notice to *B* that he chose to terminate the lease.

Where the plaintiff, in an action of trover against *B* and *C*, introduced evidence proving a conversion by *B* only, without the participation or knowledge of *C*; it was held, that it was not then competent to the plaintiff to prove a distinct conversion by *C*.

This was an action of trover against *Solomon Marsh* and *John E. Sedgwick*, for a stage coach.

The cause was tried at *Litchfield, February* term, 1842, before *Storrs*, J.

On the 10th of *February*, 1839, and before, the plaintiff was the owner of the coach in question. On the 22nd of *November*, 1839, it was in the possession of *Major C. Peck*, and was then attached as his property, in a suit in favour of the *Litchfield and Canaan Turnpike Company* against him, by *Albert Sedgwick*, sheriff of *Litchfield* county, by direction of the defendant, *Marsh*, the agent of that company.

The plaintiff, in order to show, that he was owner of the coach, at the time of its attachment, introduced in evidence the following written agreement between him and *Peck*, the execution of which was admitted : " This agreement, made and entered into, this 11th of *June*, 1839, between *Moses Forbes* and *Major C. Peck*, witnesseth, That said *Peck*, in consideration of the promise of the said *Forbes* hereinafter mentioned, agrees and promises to pay said *Forbes* the sum of 200 dollars, on or before the 1st of *August*, 1839 : and said *Forbes*, on his part, promises and agrees, upon the performance of said *Peck*, on or before the day aforesaid, to sell and deliver to him a two-horse coach, called the *Jagua* coach, now in the possession of said *Peck :* said payment may be

made by said *Peck,* by his note for that sum, indorsed by Messrs. *Babcock & Harris :* said note is to be on interest from this date ; or if the money is paid, interest on the same is to be paid from this date ; and said *Peck* is to have the use of the coach, in the meantime.            *M. C. Peck,*
                                         *Moses Forbes.*"

The plaintiff claimed to have proved, that this agreement was executed, on said 11th of *June,* 1839, honestly and *bona fide ;* that by virtue thereof, *Peck* then took possession of said coach, and continued in possession thereof until the 1st of *August,* 1839, when, he having paid no part of said sum of 200 dollars, the plaintiff refused to permit him to use said coach, or retain the possession of it any longer, unless some further arrangement should be made respecting it ; that it was then honestly and *bona fide* agreed between the plaintiff and *Peck,* that he might continue to use said coach for the transportation of the *United States* mail and passengers, in which business he was then engaged, but that no particular time was stipulated during which he was to use it ; and that he should pay the plaintiff 30 dollars for such anticipated use, which sum he paid at that time ; that he continued to use said coach, for the purpose specified, until it was attached, by direction of the defendant, *Marsh ;* and that it was subsequently sold on the execution which issued on a judgment rendered in that suit.

The defendant, *Marsh,* claimed to have proved, that on the 10th of *June,* 1839, and prior to the execution of the written agreement of the 11th of *June,* 1839, *Peck* bought said coach, and took possession thereof, from the plaintiff, and paid him 70 dollars towards the price thereof ; that on the 1st of *August* following, he paid the plaintiff the further sum of 30 dollars towards the price thereof ; and that from the time of taking possession thereof, he used said coach as his own, and had, during said period, the controul, use, and possession thereof, until it was attached as aforesaid, claiming it as his own property and offering to sell it as such ; that the officer who attached it, fully believed, at the time, that it was the property of *Peck,* who said that it belonged to him, and that the plaintiff had no interest therein ; that *Peck,* while in possession of said coach, was permitted by the plaintiff to hold himself out to the world as the owner thereof ; that if

the plaintiff did not sell said coach to *Peck*, prior to the agreement of the 11th of *June*, there was a sale and delivery of it afterwards, and before the attachment; that the attachment took place at *Litchfield*, while it was in possession of *Peck's* driver; that such driver was permitted, by the officer, to drive the coach immediately back to *Canaan*, at the usual and regular time, with the mail and passengers; and that it was there receipted, by *Peck* and *Hiram Johnson*. The defendant, *Marsh*, also claimed to have proved, that the agreement of the 11th of *June* was entered into fraudulently, with the intention of defrauding the creditors of *Peck*, and enabling him to procure a false credit.

The plaintiff denied, that he delivered possession of said coach to *Peck*, or that he had possession thereof, prior to the execution of said written agreement; or that *Peck* was suffered, by the plaintiff, to hold himself out to the world, or to any person, as the owner of said coach.

It was admitted, that the plaintiff had never, after the 1st of *August*, 1839, or prior to the attachment, demanded said coach of *Peck*, nor given any notice to him of the determination of the letting, nor taken said coach into his, the plaintiff's, possession.

The defendant claimed, as matter of law, that the agreement of the 11th of *June* ought to be construed as substantially a sale of the coach from the plaintiff to *Peck*, and a re-conveyance thereof, by way of mortgage, from *Peck* to the plaintiff; especially as against the defendant, who had attached the property as belonging to *Peck*. The defendant also claimed, that the evidence showed a sale and delivery of the coach, by the plaintiff, to *Peck*, and if so, that the plaintiff could not recover; and that, if the plaintiff permitted *Peck* to hold himself out to the world, the jury ought to find for the defendant; that even if the general property of the coach was in the plaintiff, yet upon the facts admitted and claimed to be proved, this action could not be sustained, for want of such a title in the plaintiff as was necessary to maintain this action; and also, that there was no conversion.

The court charged the jury, that said written agreement was not to be considered as a sale of the coach from the plaintiff to *Peck*, but only an agreement for the sale thereof thereafter; and that *Peck* did not become the owner thereof,

by virtue of the terms of the instrument, when it was executed. If, however, the transaction was fraudulent, and not in good faith; if in truth and fact, it was intended as a sale; if the transfer was merely colourable, or made to conceal the property from *Peck's* creditors; or if there was a design and intention to make the property appear to belong to *Peck*, in order that he might obtain credit upon it; or if the plaintiff permitted *Peck* to hold himself out as the owner of the property; or if the plaintiff himself held out *Peck* as the owner of the property; or if, prior to the attachment, the plaintiff had sold the property to *Peck*; in either of these cases, it was liable to the attachment levied upon it, and the verdict should be for the defendant. The court also charged the jury, (*pro forma,*) that if, on the 1st of *August,* 1830, it was, as claimed by the plaintiff, honestly and *bona fide* agreed between him and *Peck*, that *Peck* might continue to use the coach, but no particular time was stipulated during which he was to use it, it was to be deemed a letting thereof at the pleasure of the parties, and the plaintiff had a sufficient title, at the time of the attachment, to maintain this action, although he had not, prior to such attachment, demanded the same, or the possession thereof, of *Peck*, nor given him any notice of the determination of said letting, nor taken the coach into his, the plaintiff's, possession. The court also charged the jury, that the taking of said property, on the attachment, by the officer, constituted a conversion thereof; and that if it was so taken, by the direction of *Marsh*, he was liable therefor in this action; that there being no evidence against the defendant, *Sedgwick*, he must be acquitted; that if, after the coach was so taken, it was delivered by the officer to the plaintiff, or to *Peck*, as his agent, such re-delivery would not bar or defeat the action, but would only have the effect of reducing the damages to be recovered therein; and that, if the property was delivered by the officer to *Peck* and *Johnson*, and received by them upon their receipt, such delivery would not be deemed to be made to the plaintiff, or to *Peck*, as his agent; but the possession of the property would be deemed to be held under the officer. The jury were instructed to return a verdict for the plaintiff, or for the defendant, in conformity with these principles, as they should find the facts in the case.

At the commencement of the trial, the plaintiff, for the purpose of proving a conversion of the coach in question, called a witness, *viz. Albert Sedgwick*, Esq., who testified, that on the 22nd of *November*, 1839, he, as sheriff of *Litchfield* county, by direction of *Solomon Marsh*, one of the defendants, took said coach as the property of *Major C. Peck*, by virtue of a writ of attachment, which had been put into his hands for service, in favour of the *Litchfield and Canaan Turnpike Company*, against said *Peck;* and that *J. E. Sedgwick*, the other defendant, had nothing to do with the attachment of said coach, and did not even know of it. For the purpose of maintaining this action against *J. E. Sedgwick*, as well as against *Marsh*, the plaintiff offered evidence to prove, that the coach was detained on said process, by the sheriff, until it was sold on the execution issued on the judgment rendered in that suit against *Peck;* and that it was so sold, by said *J. E. Sedgwick.* To this evidence the defendant objected, on the ground, that the plaintiff, having offered evidence to prove one conversion of the property, in which the defendant, *Marsh,* only was concerned, it was not competent for the plaintiff to prove another conversion thereof, in which *J. E. Sedgwick,* the other defendant, was concerned jointly with *Marsh.* The court sustained the objection, and excluded the evidence so offered by the plaintiff.

The jury returned a verdict in favour of the defendant, *Sedgwick,* and against the defendant, *Marsh.* The latter thereupon moved for a new trial, for a mis-direction. The plaintiff also moved for a new trial, on account of the rejection of evidence offered by him.

*T. Smith* and *Seymour*, in support of the defendant's motion, contended, 1. That it was not competent for the plaintiff, after having proved one conversion of the coach by *Marsh* and *Albert Sedgwick*, in the levy of the attachment in the suit against *Peck*, to introduce evidence of another conversion, by *Marsh* and *J. E. Sedgwick*, in levying the execution. It is to be observed, in the first place, that but one conversion is alleged in the declaration. Secondly, that the two levies were separate and distinct acts, done several months apart, under different processes, and each constituting a complete conversion of the property in question. Thirdly,

*Litchfield,*
*June, 1843.*

Forbes
*v.*
Marsh.

to permit the plaintiff, under such circumstances, to prove the acts in question, would or might implicate a party in a wrong, and compel him to pay damages, when he was not concerned in it, and did not even know of the transaction. The effect must inevitably be, to involve, to a greater or less extent, the innocent with the guilty. *Nichol* v. *Glennie* & al. 1 *Mau. & Sel.* 588. *Aaron* v. *Alexander* & al. 3 *Campb.* 35. *Sedley* v. *Sutherland* & al. 3 *Esp. Ca.* 202. *Tait* v. *Harris* & al. 6 *Car. & P.* 73. (25 *E. C. L.* 288.) *Wynne* v. *Anderson* & al. 3 *Car. & P.* 596. (14 *E. C. L.* 471.)

2. That the written agreement may, by the creditors of *Peck*, be treated as a sale and re-sale by way of mortgage; and in such case, the exclusive possession by him, of the coach, for the period of five months, he all the while using it as his own, authorized them to consider him the owner, and the claim of the plaintiff fraudulent. If there be, in fact, a sale, it is admitted, that the vendor, as against the creditors of the vendee, cannot secure the payment of the price on the property, and at the same time give possession to the vendee. Now, a vendor cannot evade this rule, where the transaction has all the essential attributes of a sale, by putting the agreement in the form of an executory contract of sale. To determine whether any particular transaction be a sale, or an executory contract of sale, we should attend rather to the substance of the agreement, than to the phraseology used. If, in this case, the written agreement conferred all the rights and imposed all the obligations resulting from a sale and re-sale by way of mortgage; and if both the parties were placed in precisely the same situation they would have been, in that case—the mere use of words in the *future tense*, cannot convert the transaction into an executory contract of sale. By virtue of the agreement in question, *Peck* was under a positive obligation to pay the price; he was also to pay interest on the price to the day of payment; he was entitled to the use of the coach, without accountability, until he made default of payment; on payment at the day, his right to the coach would become absolute, without any act to be done by the plaintiff; the property vested in *Peck*, in the same manner as it does in the case of a sale and re-sale by way of mortgage; the property was, in the same manner, at the risk of the vendee; the condition of the vendor and vendee would

Litchfield,
June, 1843.

Forbes
v.
Marsh.

be precisely the same, on breach of the condition. 2 *Kent's Com.* 495. *Bloxam* & al. v. *Sanders* & al. 4 *B. & Cres.* 941. (10 *E. C. L.* 477.) *Tarling* v. *Baxter*, 6 *B. & Cres.* 360. (13 *E. C. L.* 199.) *Brown* v. *Bement* & al. 8 *Johns. R.* 96. *Langdon* v. *Buel*, 9 *Wend.* 80. *Case* v. *Boughton*, 11 *Wend.* 106. *Patchin* v. *Pearce*, 12 *Wend.* 61. *Walker* v. *Wheeler*, 2 *Conn. R.* 299. *Howes* v. *Ball*, 7 *B. & Cres.* 481. (14 *E. C. L.* 90.) *Clark* v. *Henry*, 2 *Cowen* 324. *Ackley* v. *Finch*, 7 *Cowen* 290. *Robinson* v. *Cropsey*, 2 *Edw. Ch. R.* 139. A different doctrine, when sanctioned by this court, would wholly supersede sales and re-sales by way of mortgage, in this state. They would all be turned into executory contracts of sale; and we should have inflicted on the community all the evils which result from permitting creditors to take security on property which they suffer to remain in the hands of their debtors.

3. That if the plaintiff has sustained an injury, trover is not the appropriate remedy. This action will not lie, unless the plaintiff has the right of property and the right of possession—*i. e.* of *immediate* possession. 1 *Chit. Plead.* 151. 2 *Wms. Saund.* 47. n. *Gordon* v. *Harper*, 7 *Term R.* 9. *Bloxam* v. *Sanders*, 4 *B. & Cres.* 941. (19 *E. C. L.* 477.) It is a settled principle, that a party cannot sustain trover, if he has parted with the right of possession, for a specific term, or a definite period of time. The remedy of the general owner, in such case, is an action on the case for an injury to his reversionary interest. *Gordon* v. *Harper*, 7 *Term R.* 9. *Furguson* v. *Christall*, 5 *Bing.* 305. (15 *E. C. L.* 454.) *Vincent* v. *Cornell*, 13 *Pick.* 294. So, also, when the general owner agrees that the bailee may appropriate the property to his own use, for an indefinite period, determinable at his pleasure, or at the pleasure of both, trover will not lie for an injury during the term; but the remedy is an action on the case. *Fairbank* v. *Phelps*, 22 *Pick.* 535. *Smith* v. *Plomer*, 15 *East* 606. *Pain* v. *Whittaker*, *Ryan & Moo.* 99. (21 *E. C. L.* 390.) *Furguson* v. *Christall*, 5 *Bing.* 305. (15 *E. C. L.* 454.)

In this case, *Peck*, on the 1st of *August*, paid the plaintiff 30 dollars specifically for the future use of the coach; and he thus purchased the right of possession until the use should amount in value to that sum. The plaintiff offered no proof,

at the trial, that this right was exhausted, at the time of the attachment ; but, for aught that appears, *Peck* then had an interest, more or less valuable, by virtue of this payment. *Smith* v. *Plomer,* 15 *East,* 606.

4. That there was, in this case, no conversion. *Mallalieu* v. *Laugher,* 3 *Car. & P.* 551. (14 *E. C. L.* 443.) *Vincent* v. *Cornell,* 13 *Pick.* 294. *Leonard* & al. v. *Tidd* & al. 3 *Metc.* 6.

*Church,* contra, contended, 1. That there was no sale or mortgage of the coach, but only a conditional agreement at a future time.

In the first place, there was no sale by virtue of the written agreement of the 11th of *June.* Each party promised to do something in future. *Peck* promised to pay *Forbes* 200 dollars, on the 1st of *August.* What did *Forbes* promise to do ? He promised " upon the performance of said *Peck,* on or before the day aforesaid, to sell and deliver to him" the coach in question, which was then in his possession. The agreement was, on both sides, *executory.* There was promise for promise ; and neither party could sue for a breach, without showing performance, or a readiness to perform, on his part. Where the contract is for one party to sell, and for the other to buy, at a future time, no title to the property passes. This coach, between the 11th of *June,* and the 1st of *August,* was not at the risk of *Peck.* If it had been destroyed, *Forbes* could not have performed at all. If *Forbes* had sold it to a third person, *Peck* could not have maintained trover for it. The law on this subject is well settled in *Massachusetts,* in conformity with our claim ; as the court will see from the cases, if they will look them up. It is the duty of the court to look up the law.

Secondly, no title passed, by virtue of the verbal agreement of the 1st of *August.* *Peck* failed to pay the 200 dollars ; and *Forbes* refused, as well he might, to let him go on any longer, unless a new arrangement was made. There was then an abandonment on both sides of the agreement of the 11th of *June ;* and a new agreement entered into, by which *Forbes* leased the coach to *Peck,* for a term not ex-

pressly specified, and *Peck* paid 30 dollars down for the use. Here was clearly *no sale.*

Thirdly, the honesty and good faith of the whole transaction was submitted to the jury, and they have found it in the plaintiff's favour. Now, the possession of the coach by *Peck, bona fide,* as bailee or lessee, and with no other title, or claim of title, does not make it liable to his creditors. He is neither owner, nor vendor in possession after a sale.

2. That the taking of the property under the attachment, by the direction of *Marsh,* was a conversion by him.

3. That trover was the proper form of action.

4. That the evidence offered by the plaintiff to show a conversion by *John E. Sedgwick,* should have been received. The declaration alleged a conversion by him and *Marsh* jointly. This the plaintiff had a right, and was bound, to prove. If he was apprehensive the proof first introduced might not be sufficient, why not let him give other proof? If the first witness does not come up to the mark, is that to keep back all the rest ?

WILLIAMS, Ch. J. It was not denied that the coach was once the property of the plaintiff; but it was claimed, that by the writing of the 11th of *June,* 1839, it became the property of *Peck ;* that the instrument was in the nature of a sale and mortgage, and ought so to be treated ; and that, if this was not so, yet the contract of the 1st of *August* placed it out of the hands of the plaintiff so that he could sustain no action; that the possession by *Peck,* was, in its nature, fraudulent and void as against creditors. These propositions were not assented to, by the court ; and a verdict was given for the plaintiff against the defendant *Marsh,* who moved for a new trial.

By the contract of the 11th of *June, Peck* promised, in consideration of the plaintiff's promise, to pay to him 200 dollars, by the 1st of *August,* 1839 ; and the plaintiff promised, on *Peck's* performance, to sell and deliver to him the coach, then in *Peck's* possession, during said term. Payment might be made, by an indorsed note upon interest. The defendant claimed, that said agreement ought to be construed as substantially a sale of the coach, with a re-conveyance by way of mortgage. The plaintiff contended, that there was

no sale intended, and none made ; that it was but an agreement to sell at a future day, and upon certain conditions to be performed by *Peck ;* and that such was the manifest intention of the parties. The defendant claimed, that it had all the incidents of a sale and mortgage ; that *Peck* was bound, at all events, to pay the principal ; and that he was to pay interest upon it ; that he was to have the use of the property without accountability ; and that the title would be complete upon payment at the day. It certainly is not necessary to deny, that a sale of this kind may have some resemblance to a mortgage ; but that there may be conditional sales which are not strictly mortgages, is equally undeniable. Thus, where a quantity of candles was sold and delivered, but on the express declaration that the vendor should not consider them as sold until he received further security ; it was held, that the property continued in the vendor. *Hussy* v. *Thurston* & al. 4 *Mass. Rep.* 405.

So where wool to manufacture was delivered by *A* to *B*, at 75 cents *pr. lb.* to be paid in 6 months, to remain the property of *A*, till paid for ; it was held, that the property remained in *A*, against *B's* creditors, as well as himself. *Barrett* v. *Pritcherd,* 2 *Pick.* 512.

It is claimed, however, that these and many other cases in *Massachusetts* of a similar character, are peculiar to that state. The court think otherwise, and that they are based upon the principle of the common law, which construes contracts according to the intentions of the parties, and allows men to contract according to their own pleasure, unless contrary to the policy of the law or certain technical rules. The owner may dispose of his goods to whomsoever he pleases, at any time and in any manner. 2 *Bl. Com.* 447. For every man's bargain ought to be performed as he intended it. When he relies upon his remedy, it is but just that he should be left to it, according to his agreement ; but on the contrary, there is no reason why a man should be forced to trust where he never meant it. Per *Holt,* Ch. J. *Thorpe* v. *Thorpe,* 1 *Salk.* 171. For the agreement of the minds of the parties is the only thing the law respects in contracts. *Plowd. C.* 140. Where then *H* agreed to take *A's* sheep to pasture, for a time, and if, at the end of that term, he should pay *H* so much for the sheep, he should have them ; this was held to be not a sale, but a

contract to sell; and a sale by *H* was held to be valid.    *Mires* v. *Solebay*, 2 *Mod.* 242.    And where a bill of lading of goods was made to *V*, if he accepted and paid a draft also sent; the bill and draft were presented to *V*; he accepted the draft, and separated it from the bill of lading, and sold the latter for value, but did not pay the draft; it was held, that as *V* had not fulfilled the condition, the title to the goods never vested in him.    *Barrow* v. *Coles*, 3 *Campb.* 92.    And in a more recent case, where wheat had been sold and shipped for the plaintiff, on his account and risk, and an invoice and bill of lading sent to him, on receipt of which he was to send a banker's draft; the plaintiff failed to do this; and the court held, that the property in the wheat passed; that actual delivery should depend upon a compliance with the condition; and therefore, that the defendant was justified in preventing such a delivery. *Wilmshurst* & al. v. *Bowker* & al. 2 *Man. & Gran.* 792. (40 *E. C. L.* 629.)    In *Patten* v. *Smith*, 5 *Conn. Rep.* 106. 201. *Marsh* sold his types to *Storrs*, who was to pay in six and nine months, and if the first payment was not made in six months, it was at *Marsh's* option to take back the property; although it was held, that *Marsh* could not rescind the contract, at any future time, yet at the end of six months, he could rescind or affirm it.    And in a recent case in the state of *New-York*, where *Strong*, the owner of a canal boat, called *Signal*, agreed to sell the same to another for 300 dollars, provided that sum was duly paid, at a future time specified, by carrying freight, &c., and the boat was attached as the property of the vendee.    *Nelson*, Ch. J. says, he was at first inclined to view the contract as a mortgage, and the interest a subject of execution;—but on the whole, he concluded, that the soundest view of it was, that it was a conditional sale, in which aspect the property did not vest in the vendee, till performance of the condition—a condition which the vendee had a right to impose for his own security.    Until fulfilment of the condition nothing passed, though he had possession, and a right of possession for a specific object.    *Strong* v. *Taylor*, 2 *Hill* 326.    In this case, as in that, there is a promise to sell at a future day, if certain payments were made by the vendee; and possession was in both cases given.    There is no difference in these cases, except that here it is admitted, that 70 dollars, part of the purchase money, was paid, when this writing was given; and we cannot see how that should change

the arrangements the parties have made as to the time when the title to this property should vest. It was clearly their intention, that this should take place only when the purchaser had done what he agreed to do, on his part; and we know of no principle, and have been shewn no case, to prove, that this agreement was not perfectly fair as between the parties.

Two cases, however, have been relied upon, in the *English* books, by the defendant, which require notice. One is *Tarling* v. *Baxter*, 6 *B. & C.* 360. (13 *E. C. L.* 199.) The plaintiff bought of the defendant a stack of hay standing in the field, 4th *January*, 1825; and the defendant gave a note of the tenor following: "I have this day agreed to sell *J. Tarling*, a stack of hay standing on *C.* field, at the sum of 45*l.* —the same to be paid the 4th day of *February* next;" and the buyer gave this note: "I, this day, agree to buy of Mr. *J. Baxter* a stack of hay standing in *C.* field, at the sum of 45*l.* —the same to be paid on the 4th day of *February* next, and to be allowed to stand on the premises until the 1st day of *May* next; the same hay not to be cut till paid for. *Jan.* 4th 1825." In this case, the court recognize the idea of a prospective sale, but hold, that the one in question was an immediate one, and place it upon the intention of the parties. The rule, they say, is, when nothing is to be done by the vendor, the title vests; and the note of the buyer in that case, they say, imports an immediate, perfect, absolute agreement of sale. The true construction of the agreement is, that the parties intended an immediate sale; but in this case, *Peck* promises to pay, not in consideration of the sale, but of the promise; and the plaintiff promised, in consideration of *Peck's* performance, to sell and deliver the coach in question. The parties, then, contemplated some act to be done by the plaintiff; and though the coach was in *Peck's* possession, yet the contract negatives its being in his possession as his own. It is, therefore, apparent, that the plaintiff could not have intended an absolute sale, but a sale depending entirely upon performance on the part of *Peck.*

In *Howes* v. *Ball,* 7 *B. & C.* 481. (14 *E. C. L.* 90.) *H.* agreed to give *B.* 100*l.* for a new stage coach; in payment of which *H.* was to give four bills of 25*l.* each; and agreed, that *B.* should hold a claim upon the coach until the debt should be fully paid. The court say, taking into consideration the

agreement, the delivery of the bills by *H.* to *B.*, and the delivery of the coach by *B.* to *H.*, we think the transaction amounted to a sale of the coach so as to transfer the property. There the bills were delivered for the coach, and the coach delivered under the contract; and instead of contemplating a new delivery upon payment, they treat it as delivered; and the purchaser contracts, that the seller shall have a claim or lien upon it. We do not think, therefore, that these cases interfere with the principles adopted in the case before us.

It was further proved, in this case, that on the 1st of *August, Peck* not having performed, a new arrangement was made *bona fide* between the parties, that *Peck* should, in consideration of 30 dollars paid, be allowed to use the carriage to transport the mail and passengers; but no term was fixed, and *Peck* continued to use it till it was attached. It is difficult to see how *Peck* could, after making the agreement which amounted to the acceptance of a lease of the coach, claim it, under what he calls a *sale.*

But it is said, this contract must be void as against the creditors of *Peck;* as there is the same danger of fraud as where possession is retained by the mortgagor. We are not disposed to say, that there is no danger of fraud, in such cases; nor that they should not be closely watched to guard against fraud. A similar objection would hold good in many cases, where the possession of personal property is in one man and the ownership is in another; as where one lets his horse to a neighbour to go to mill, or a livery stable keeper lets his horse to a rogue. But the rule is not universal, that possession is the only evidence of title to personal property. On the contrary, much of such property may be securely placed in the hands of others, without becoming liable to be seized for the debts of the possessor.

The rule of law making the property of one man liable for the debts of others in whose hands it is found, is applicable particularly to that property which was once owned by the possessor, and is by him sold or mortgaged to another, and then suffered to remain in his possession. In such cases, possession is evidence of fraud, because there is not given to the world the usual evidence of a change of title. The vendor or mortgagor is, therefore, presumed to remain owner of the property, as heretofore. It is otherwise in cases like that

*Litchfield,*
June, 1843.

Forbes
*v.*
Marsh.

before us.    The vendee comes into possession of property, which was known to belong to another man.    Whether, therefore, the vendee had borrowed it, or hired it, or purchased it, becomes a matter of enquiry, and ought to be ascertained, by him who proposes to trust his property upon the faith of this appearance ; for the law offers its protecting shield to those who attempt to protect themselves.    Accordingly, we find, that all these cases of conditional sales made *bona fide*, have been held good as against attaching creditors, as well as against the parties.    In the cases above cited from *New-York* and *Massachusetts*, the claim was made by creditors. So too, in the cases of *Vincent* v. *Cornell*, 9 *Pick*. 156.    *Fairbanks* v. *Phelps*, 2 *Pick*. 535.    *Patten* v. *Smith*, 5 *Conn. Rep.* 201.    the same principle was recognized, though the cases may have been determined upon other points.    We think, therefore, that the judge placed the case upon the true ground, that this writing was not a sale, but only an agreement for a sale ; but that if it was colourable, not made in good faith, but intended to conceal the property from *Peck's* creditors ; or if there was a design to make it appear his, that he might get credit upon it ; or if the plaintiff had held out *Peck* as owner, or suffered him so to hold out himself—then the attachment would prevail against the claim of the plaintiff.

2. It was also claimed, on the part of the defendant, that on the 1st of *August*, a new contract was entered into, by which the stage coach, in consideration of 30 dollars, paid by *Peck*, was leased to him, to run upon that road ; and therefore, the plaintiff could not sustain this action.    It was also claimed, that as the officer had delivered the property attached to *Peck* and *Johnson*, taking their receipt therefor, that there was no conversion.    The court below was of opinion, that if the defendant took the property tortiously, *that*, of itself, would contitute a conversion ; and a delivery to *Johnson* and *Peck*, upon their receipt, did not change at all the character of the previous act ; which opinion is certainly correct.

3. That court further, *pro forma*, the better to decide the real merits of the case, charged the jury, that if they found the coach was leased, by the plaintiff, to the defendant, for an indefinite time, the lease was at the pleasure of the parties; and the plaintiff might maintain this action, although he had not, before the attachment, demanded the carriage, or

given notice to *Peck* that he chose to terminate the contract. Upon this point, we think a mistake has occurred. That the owner of furniture or other personal property, who has leased it, for a certain time, cannot, during the term, maintain trover, is a well settled principle. *Gordon* v. *Harper*, 7 *Term Rep.* 9. *Paine* v. *Whitaker, Ry. & N.* 99. (21 *E. C. L.* 390.) *Smith* v. *Plomer*, 15 *East*, 607. For the plaintiff must have not only the right of property, but the right of possession. By the agreement of the 1st *August*, this carriage was leased to *Peck*, and although no fixed time was set, yet as 30 dollars was received therefor, it must be considered as an agreement on the part of the plaintiff, that *Peck* should have the use of it, for such a length of time as this sum would compensate for; in other words, that *Peck* should have an interest or term therein worth 30 dollars; and as that is certain which can be rendered certain, *Peck* must be considered owner *pro tempore*, and so the possession could not be in the plaintiff. It is true, that we do not know when the term of the lease would expire, as we do not know what would be a fair rent for this carriage for a year, or a month; but we have no reason to suppose, that 30 dollars would not purchase a larger term than from the 1st *August* to the 22d *November*, the day of the attachment. At all events, this is a question to be submitted to a jury. *Peck*, by the payment of 30 dollars, had acquired an interest in this carriage, and a right to use it until he had received the value of the consideration paid; and during that time, the plaintiff cannot complain that it was taken out of his possession. It is not necessary, therefore, to determine, whether any demand on *Peck* was required: it is enough that the possession of the plaintiff cannot be disturbed, till his right of possession returns; and as he parted with it for an indefinite period, he must shew, that it has revived. The court, therefore, are of opinion, that a new trial must be granted.

4. On the trial, the plaintiff offered to prove, that the defendant *Marsh* directed the coach to be attached, on the 22d of *November*, by the witness; and that the defendant *Sedgwick* was not there, and knew nothing of it; and afterwards, for the purpose of charging *Sedgwick*, as well as *Marsh*, the plaintiff offered to prove, that the coach was detained under that attachment, till it was sold by the defendant *Sedgwick*, by

*Litchfield,*
*June, 1843.*

Forbes
*v.*
Marsh.

*Litchfield,*
*June, 1843.*

Forbes
*v.*
Marsh.

the direction of *Marsh*, on the execution. The defendants objected to this evidence ; there being but one count in the declaration, and the plaintiff having, in support of that, proved *Marsh* only guilty. It was ruled not to be competent for the plaintiff to prove a distinct conversion, by *Marsh* and *Sedgwick*, in the sale ; and for this, the plaintiff asks a new trial. The court is of opinion, that he has no ground of complaint. The plaintiff might have proved his charge of conversion against *Marsh*, by shewing that he caused the property to be attached ; or he might have proved it against *Marsh* and *Sedgwick* jointly, by shewing the sale by *Sedgwick*, under *Marsh's* direction. He chose the former ; and unless he expressly waived that, and as upon one count general damages must be given, *Sedgwick* might have been made to pay damages for a trespass he never committed. *Aaron* v. *Alexander*, 3 *Campb.* 35. *Sedley* v. *Sutherland*, 3 *Esp. Ca.* 203.

Another question was raised, by the plaintiff's motion ; but as it was not insisted upon, in the argument, we consider it as abandoned.

In this opinion the other Judges concurred.

New trial to be granted.