FLINT WAGON WORKS, a corporation created by and existing
under the laws of the State of Michigan, *vs.* WILLIAM E.
MALONEY, Sheriff of Kent County.

1. SALES—CONDITIONAL SALE—WHAT CONSTITUTES.

Where the terms of a contract for the sale of goods provide that the
title is to remain in the vendor until payment is made, and that the goods
shall be immediately returned to the vendor or placed at its disposal on the
financial embarrassment of the vendee, it is a conditional sale as between the
parties.

2. CONTRACTS—CONSTRUCTION—INTENTION OF PARTIES.

It is the duty of courts to construe contracts to carry out the intention
of the parties, and such intention must govern, when ascertainable from the
agreement, unless in contravention of an established principle of law or
against public policy.

3. SALES—CONDITIONAL SALE—CREDITORS OF BUYER.

While a provision of a contract for the sale of goods, which are to be
resold at retail, that title shall remain in the vendor until payment is made,
cannot be enforced by the original vendor against a purchaser in the ordinary
course of trade, because of its inconsistency with the express purpose for
which the goods were sold, the vendor is estopped from·asserting his title
only to that extent; and where the contract of sale, which was entered into in
good faith, shows that it is the intention of the parties that title be retained
in the seller until the buyer sold the property in the regular course of his
business, and until that unsold was paid for, it cannot be construed to allow
a creditor of the vendee to levy on the property and sell it for the payment of
his debts, and the vendor may assert his title against such creditor, who has
previously obtained the goods under execution.

*(October* 24, 1911.)

PENNEWILL, C. J., and RICE, J., sitting.
*Richard R. Kenney* and *William Penn Shockley* for plaintiff.
*James H. Hughes* for defendant.
Superior Court, Kent County, April Term, 1911.

REPLEVIN (No. 5, July Term, 1909).
Case stated; the facts appear in the opinion of the court.

BRIEF OF ATTORNEY FOR THE PLAINTIFF.

The question submitted is whether or not on April twenty-
sixth, 1909, the plaintiff was entitled to possession of the property
replevied.

The law of conditional sales in this state has been fully recog-
nized. All cases decided prior to the case of *Duplex Printing Co.*

*v. Journal Printing Co.*, 1 *Penn.* 565, are fully reviewed in that case.

This case differs from the cases reported in this state, in that the question here is as to the right of a creditor to take in execution the property of a vendee sold to him under a conditional sale.

Cases in this state on conditional sales: *Watertown Steam Engine Co. v. Davis,* 5 *Houst.* 192; *Truax v. Parvis,* 7 *Houst.* 330; *Forbes v. Martin,* 7 *Houst.* 375; *Matthews v. Smith,* 8 *Houst.* 22; *Ott v. Specht and Spahn,* 8 *Houst.* 61; *Duplex Printing Press Co. v. Journal Printing Co.*, 1 *Penn.* 565; *South Bend Iron Works v. Reedy,* 5 *Penn.* 361; *Townsend v. Melvin,* 5 *Penn.* 495; *Knowles Loom Works v. Knowles,* 6 *Penn.* 185; *Staunton v. Smith,* 6 *Penn.* 193.

A sale of goods, the right, title and interest therein to remain in the seller until sold by the purchaser, does not pass the absolute title at once to the purchaser so as to render the property subject to levy and sale upon an execution in favor of the latter's creditors.

*Am. and Eng. Ency. of Law, Vol.* 21, 657 (*Note* 2, 1 *Ed.*)

If the goods are taken under execution against the purchaser before they are paid for, they may be replevied by the seller.

*Am. and Eng. Ency. of Law, Vol.* 21, 657 (1 *Ed.*); *Gould v. Howell,* 32 *Ill. App.* 349; *Ridgeway v. Kennedy,* 52 *Mo.* 24; *Wadleigh v. Buckingham,* 80 *Wis.* 230.

Except as the general rule may be modified by statutory provisions requiring contracts of conditional sale to be executed in a certain manner and requiring such contracts to be recorded a conditional sale is ordinarily held to be valid as against creditors of the buyer.

*Cyc. of Law and Procedure, Vol.* 35, 677, *etc.,* (*Note* 98 *and* 99); *Ellis v. Holland,* 98 *Ga.* 154, 26 *S. E.* 735; *Hall v. Larey,* 73 *Ga.* 697; *Churchill v. Bailey,* 13 *Me.* 64; *Dewes Brewery Co. v. Merrit,* 82 *Mich.* 198, 46 *N. W.* 379; 9 *L. R. A.* 270; *Marquette Mfg. Co. v. Jeffrey,* 49 *Mich.* 283, 13 *N. W.* 592; *McFarland v. Farmer,* 42 *N. H.* 386; *Fennikoh v. Gunn,* 59 *N. Y. App. Div.* 132, 69 *N. Y. Supp.* 121; *Piser v. Stearns,* 1 *Hilt.* 86; *Tufts v. Cleveland,* (1887)

3 *S. W.* 288;    *City Nat. Bank v. Tufts*, 63 *Tex.* 113; *Mechanics Bank v. Gullett Gin Co.* (*Civ. App.* 1898), 48 *S. W.* 627; *Harkness v. Russell*, 118 *U. S.* 663, 7 *S. Ct.* 51, 30 *L. Ed.* 285 (affirming 4 *Utah* 197, 7 *Pac.* 865); *The Marina*, 19 *Fed.* 760.

A sale and delivery of personal property upon condition that title shall remain in the vendor until payment of the price or upon some other condition, vests no such title in the vendee before payment as to render the property subject to levy and sale upon an execution against the vendee, in favor of his creditors, and if so taken the vendor can recover the property.

*Wilson v. Lewis*, 63 *Neb.* 617; *In re Atlanta News Publishing Co.*, 160 *Fed.* 519; *Mack v. Story*, 57 *Conn.* 407.

Where a vendee is a retailer of goods, wares and merchandise and purchases property for re-sale from a vendor on a conditional sale, in order to vest property and title in the purchaser, such sale by the vendee must be in the ordinary and usual course of business.


### BRIEF OF ATTORNEY FOR DEFENDANT.

It appears that certain carriages were ordered by Wilson, a retail dealer in such goods, having a store, in the Town of Smyrna, and delivered in October, 1908, and after some of them had been sold in the retail business, those, enumerated in Exhibit "A", were levied upon by an execution creditor, and were replevied by the plaintiff.

The sole question before the court is:

*First.*    Whether the sale of the goods to Wilson by the plaintiff was a conditional sale?

*Second.*    Whether, if a conditional sale, it was good as against the creditors of Wilson?

The condition of the sale is as shown on the back of the order marked Exhibit "B".

As between the vendor and vendee such provisions were all well enough, but do they not indicate an absolute sale with an intention to retain the title to the goods in the name of the vendor as security for the debt and to protect the vendor from creditors of the vendee?

Other conditions, viz.: No repairs authorized; consignee to look to transportation company for overcharges in freight, loss or damage to goods; future orders to be on same terms but prices may be changed without notice; claims that goods are not in accordance with order will be made in five days after arrival of goods or they will be considered waived, do not indicate an intention to retain ownership in goods or anything but an ordinary sale. *Pontiac Buggy Co. v. Skinner*, 158 *Fed*, 858; *Manuf. Co. v. Nordeman*, 18 *Tenn.* 385.

Conditional sales have been recognized in Delaware ever since the case of the *Watertown Steam Engine Company v. Davis*, 5 *Houst.* 192.

Other cases: *Truax v. Parvis*, 7 *Houst.* 330; *Forbes v. Martin*, 7 *Houst.* 375; *Matthews v. Smith*, 8 *Houst.* 22; *Ott v. Specht and Spahn*, 8 *Houst.* 61; *Duplex Printing Press Co. v. Journal Printing Co.*, 1 *Penn.* 565; *South Bend Iron Works v. Reedy*, 5 *Penn.* 361; *Townsend v. Melvin*, 5 *Penn.* 495; *Knowles Loom Works v. Knowles*, 6 *Penn.* 185; *Staunton v. Smith*, 6 *Penn.* 193.

While conditional sales are recognized as valid in this state, a strict construction has always been placed upon them. *Matthews v. Smith*, 8 *Houst.* 22; *Duplex Printing Press Co. v. Journal Printing Co.*, 1 *Penn.* 565 (574); *Knowles Loom Works v. Knowles*, 6 *Penn.* 185 (191).

It was held in the case of *South Bend Iron Works v. Reedy*, 5 *Penn.* 361, where goods are sold or consigned to one for the purpose of being re-sold by him as a retail dealer, that it is an absolute sale, and that the vendor cannot recover such goods from a purchaser from his vendee.

A consignment or sale of goods to a vendee, who is a retailer of such goods and with the authority expressed or implied that such vendee shall re-sell such goods, is an absolute sale so far as creditors of such vendee are concerned.

*Williston on Sales*, 329; *Re. Howland* (*N. Y.*), 109 *Fed. Rep.* 869; *Devlin v. O'Neill*, 6 *Daly* (*N. Y.*) 305; *Bonesteel v. Flack*, 41 *Barb.* 435 (440); *Ludden v. Hazen*, 31 *Barb.* 650; *Loring Pub. Co. v. Johnson*, 68 *Tex.* 273; *Pontiac Buggy Co. v. Skinner*, 158 *Fed. Rep.* (*N. Y.*) 858; *Sheldon v. Meyers*, 81 *Wis.* 627; *Mayor v. Catron*,

48 *S. W.* (*Tenn.*) 255; *Cleveland Co-operative Stove Co. v. Matson*, 30 *Ill. App.* 372; *Troy Wagon Works v. Hancock*, 152 *Fed. Rep.* (*Ind.*) 605; *McFarlan Carriage Co. v. Wells*, 99 *Mo. App.* 641; *Star Clothing Mfg. Co. v. Nordeman*, 18 *Tenn.* 384; *Ott v. Stimson*, 166 *Pa. St.* 217 (220, 221).

In *Lewis v. McCabe*, 49 *Conn.* 141, it was held that "If, however, the contract in question must be construed to mean that the plaintiff authorized McAvoy (Consignee) to sell the property as his own, we should be constrained to hold it so absolutely inconsistent with the retention of the title in the plaintiff as to waive or make void the condition."

The effect of the sale of goods to one to be sold in his business is to make the transaction so inconsistent with the claim of ownership in the seller as to cause a reasonable mind to conclude that it is an absolute sale, and the best considered authorities so hold both as to purchasers and creditors generally. 1 *Beach on Contracts*, § 143.

PENNEWILL, C. J., delivering the opinion of the court:

This case is before the court upon the following agreed statement of facts:

"That on April 26, 1909, the Flint Wagon Works sued out a writ of replevin in this court against William E. Maloney, at that time sheriff of Kent County. That said writ was executed by William A. Willis, at that time coroner of said county. That under said writ the goods and chattels named in the list hereto attached and marked 'Exhibit A' were taken from the defendant. That the value of said chattels was then and there seven hundred and ninety-three dollars. That the said chattels so replevied were at that time in the hands of the defendant at Smyrna, Del., having been previously levied on by him at Smyrna aforesaid by virtue of a writ of execution in his hands at the suit of Adam F. Huey and Garrett Foxwell against Thomas H. Wilson. That the said goods and chattels had been ordered by the said Thomas H. Wilson from the said the Flint Wagon Works on October 28, 1908. A copy of the said order, together with the conditions of such sale, is hereto attached and marked 'Exhibit

B'. That the said goods and chattels were duly received by the said Thomas H. Wilson, who was a retail merchant or dealer in such goods in the Town of Smyrna aforesaid. That before the issuing of the said execution a part of the goods had been sold by the said Thomas H. Wilson. That the judgment on which said execution was issued was for a debt existing previous to the delivery of said goods to said Wilson. That said goods had not, at the time of the suing out of the writ of replevin in this case, nor have they since, been paid for to the plaintiff by the said Thomas H. Wilson or any person for him. That if the court should be of the opinion that the Flint Wagon Works was, at the time of the suing out of the aforesaid writ of replevin, entitled to the possession of the goods and chattels replevied, then judgment to be entered in favor of the plaintiff for costs, but if not, then judgment to be entered for the defendant for seven hundred and ninety-three dollars, with interest thereon from April 26, 1909, and costs—each party reserving the right to sue out a writ of error therein."

The question to be determined by the court is whether at the time the goods and chattels were replevied the right of possession was in the plaintiff or the defendant.

The terms and conditions of sale, according to "Exhibit B," which is embraced in the case stated, were in part as follows:

"The title to the goods on this order, or any subsequent orders, is to remain in your (the vendor's) name until paid for in cash, and should we through any cause suspend doing business, or become or apparently become, embarrassed financially, any account or note you have against us shall become immediately due and payable, and we will deliver to whom you may direct, or place on cars if you so direct, any or all of your goods remaining on hand, free of charge of any kind."

[1] There is no doubt that the language of the agreement respecting the property in question is such as would constitute a conditional sale under the well settled law of this and many other states.

But it is insisted that the admitted facts in this case bring it within an exception well recognized in the law governing condi-

tional sales. The facts relied upon to support such contention are: That the goods and chattels in controversy were sold by the plaintiff to Thomas H. Wilson with the knowledge that the vendee was a retail merchant or dealer, and that the property would be sold by him in the usual course of trade; that the plaintiff having such knowledge impliedly agreed that the goods and chattels might be sold by the vendee at any time as his own. Such being the case it is contended that inasmuch as the plaintiff could not maintain an action to recover the property from one who purchased it from the vendee in the usual course of trade, without knowledge of the conditional sale, he cannot maintain such an action against a creditor of the vendee who had seized the property for a *bona fide* debt.

It has been decided in this state that if a person makes a conditional sale of goods to another for the purpose of being resold by him as a retail dealer in such goods the original vendor cannot maintain title thereto against a *bona fide* and innocent purchaser from the original vendee. And this has been declared to be the law in almost every state where the question has arisen, but in most jurisdictions there are now statutes governing the subject.

In some of the cases the courts have based their decisions upon the principle of estoppel, and in others upon the principle that a reservation of title in the vendor is so inconsistent with a sale of goods to a retail dealer for the purpose of being resold by him at any time, as to make void the condition. But, we do not understand that such sales have been declared invalid, as between the original parties, in any state where such contestants are so fully recognized as in this state.

Nowhere do we find this subject more clearly treated, and the authorities more satisfactorily reviewed, than in the case of *Lewis v. McCabe*, 49 *Conn.* 141, 44 *Am. Rep.* 217.

Loomis, J., in delivering the opinion of the court in that case said:

"There is much contrariety of reasoning and decision relative to the validity of what are called conditional sales in different states, and often to some extent in the same state.

"The courts of Pennsylvania have most firmly established the

rule that a sale and delivery of personal property, with an agreement that the ownership shall remain in the vendor until the purchase money is paid, is fraudulent and void as to creditors of the vendee and innocent purchasers; but they are obliged to except cases of bailment where no present contract of sale is regarded as made, and they have often found difficulty in distinguishing between cases that lie near the border line separating sales from bailments, where there is a condition upon which the bailee may become the owner.   *   *   *

"The courts of New York seem to concur with those of Pennsylvania in holding conditional sales void as to purchasers, *   *   *   but differ in giving effect to them against levies made by creditors and assignments in trust, or as security for the payment of antecedent debts.   But when the agreement confers on the conditional vendee the right to sell, or a right inconsistent with continued ownership of the original vendor, the courts of the latter state pronounce the transaction fraudulent as against both creditors and purchasers.   *   *   *

"In Maine, Vermont and Massachusetts the condition that the right of property shall remain in the vendor until payment is held good, not only as between the original parties, but also against purchasers from the vendee and creditors of the latter, even when possession goes with the sale, and there is nothing to indicate that it is not absolute.   In all the cases of this class that have hitherto been considered by the court, the court has uniformly and consistently applied the principle embodied in the ancient maxim 'that when a man hath a thing he may condition with it as he will'."

In reply to the claim that the Massachusetts cases were peculiar to that state, the court in the case of *Forbes v. Marsh*, 15 *Conn.* 384, said:

"They are based upon the principle of the common law, which construes contracts according to the intention of the parties, and allows men to contract according to their own pleasure, unless contrary to the policy of the law or certain technical rules. The owner may dispose of his property to whomsoever he pleases, at any time and in any manner.   When he relies upon his remedy

it is but just that he should be left to it according to his agree-
ment, but on the contrary there is no reason why a man should
be forced to trust where he never meant it.   For the agreement
of the minds of the parties is the only thing the law respects in
contracts.     The rule of law making the property of one man lia-
ble for the debts of others in whose hands it is found, is applicable
particularly to that property which was once owned by the
possessor, and is by him sold to another, and then suffered to
remain in his possession.     In such cases possession is evidence
of fraud, because there is not given to the world the usual evidence
of a change of title.     The vendor is therefore presumed to remain
owner of the property as before.     It is otherwise in cases like that
before us.     The vendee comes into possession of property which
was known to belong to another man.     Whether therefore the
vendee had borrowed it, or hired it, or purchased it, becomes a
matter of inquiry, and ought to be ascertained by him who pro-
poses to trust his property upon the faith of this appearance;
for the law offers its protecting shield to those who attempt to
protect themselves.     Accordingly we find that all these cases of
conditional sales made *bona fide* have been held good as against
attaching creditors as well as against the parties."

In the Connecticut case there was an express condition that
the title to the merchandise should not vest in the vendee until
it was fully paid for, and until such payment was made the title
was to remain in the vendor.     The vendee was a retailer of liq-
uors, and it was supposed by the parties that the merchandise
would be used in his business, and in case any of it should have
been sold and consumed before the conditions of sale were complied
with, the vendor could only enforce his condition against such
portion as might remain unsold.

"Under such an agreement," said the court, "after the prop-
erty has been attached by creditors, will the law consider it as
belonging to the plaintiffs or to their conditional vendee?     If we
invoke the aid of the courts of other states to give an answer to
this question, we find decisions of the highest courts of Maine,
Vermont and Massachusetts, protecting the title of the original

vendor under agreements substantially the same as the one we are considering."

In the case of *Rogers v. Whitehouse*, 71 *Me*. 222, the court said: "We see no legal objection to a wholesale dealer making a conditional sale to a retailer with the understanding that he may dispose of the goods as they may be called for at retail, but that as between themselves the property shall not pass until the goods are paid for, and in such case, while the purchaser at retail would get a title which the original vendor could not impeach because of his agreement with the retailer, it would be the title of the original vendor, and not that of the retailer, who has none and can convey none except in the manner which his arrangement with the vendor permits." It was held in that case that the goods did not pass to the assignee in insolvency of the purchaser for the benefit of his creditors, although the original vendor would have been estopped to deny the title of those who might purchase portions of them of the retailer in the regular course of business.

In *Armington v. Houston*, 38 *Vt*. 448, 91 *Am. Dec*. 366, the defendant, a constable, attached the goods in behalf of a creditor of the vendee. The court said: "It was the unquestionable right of the plaintiff to sell his property to Thompson upon the condition that, until payment of the price, the property should remain in the plaintiff. The retention of the title to the property is not a fraud upon any person, and such a contract is one which every person has a right to make. In a conditional sale the possession of the property is ordinarily transferred to the vendee, and very frequently with expectation of both of the parties to the sale that the property will be used by the vendee; but, in such cases the vendee is, until the performance of the condition, only a bailee of the property for a specific purpose, and he acquires no property in the goods from the possession merely. His right rests upon the agreement of the parties, and their intention in making the contract of sale is to be carried into effect if the transaction was entered into in good faith, unless the contract is one which contravenes some established rule of law."

In *Burbank v. Crooker*, 7 *Gray* (*Mass*.) 158, 66 *Am. Dec*. 470, there was a sale and delivery of a stock of goods to a shopkeeper

to be put into his shop for sale, but upon condition that the title should not vest in him until payment of the price, and it was held that the title did not pass, and that the condition was operative as against even a purchaser from him of the whole stock of goods; although it was also held that, had a sale been made of individual articles in the ordinary course of business in a country store, the plaintiff might have been estopped to assert any right adverse to such purchaser, having placed them in the hands of such dealer with the understanding that they were to be thus used. But why multiply authorities? The opinions to which we have referred state with all possible clearness and force the grounds and argument in support of the validity of such conditional sales as the one now before us.

It cannot be denied that there is some conflict in the decisions upon this vexed question, but we think such conflict has arisen mainly because of the different attitude which courts in different states have taken respecting conditional sales generally. While such sales have been perhaps nowhere especially favored, and certainly not in this state, still they have been looked upon with more disfavor in some jurisdictions than in others, and particularly so in Pennsylvania.

The leading authority in support of the doctrine that the reservation of title to merchandise by a seller until payment is made is void as against creditors of the purchaser, where the latter is, by the contract, given the right to sell the merchandise in the ordinary course of business, is *In re Howland* (*D. C.*) 109 *Fed.* 869. The court held in that case that such right was inconsistent with the ownership of the seller, and one which would necessarily destroy his right of property.

It will be noted from a careful examination of that case, which was decided in the District Court of the Northern District of New York, in 1901: (1) That the cases of that state upon which this decision was based, involved an element of fraud in the alleged conditional sale; (2) that the court held the title to be absolute in the vendee, and that the condition was inoperative and void against all parties. The court cited in particular the case of *Ludden v. Hazen*, 31 *Barb.* (*N. Y.*) 650, where it was said:

"The principles of conditional sales, aside from fraud, which is very apparent, will not uphold such sale when the property is to be delivered to the buyer for consumption or for sale, or to be dealt with in any way inconsistent with the ownership of the seller, or in a manner that would destroy his lien or right of property." In *Frank v. Batten*, 49 *Hun.* 91, 1 *N. Y. Supp.* 705, which was also cited and in which the facts were similar, a like decision was given. Respecting these two cases the court, *In re Howland*, said: "These were both cases where the merchandise were sold on conditional contracts, to be retailed by the vendee, the title to remain in the vendor until paid for. Such sales are held to be inconsistent with the continued ownership of the vendor, as well as to be such as would destroy the vendor's right of property; and, as such, the title, so far as creditors of, and purchasers from, the vendee are concerned, is deemed absolute in the vendee." This case is, as we have said, the leading case against the validity of conditional sales as to creditors of the vendee when the property is sold to be retailed by the purchaser. No other case upon that side of the question is stronger or clearer, and we deem it unnecessary, therefore, to comment upon others in the same line. In the very full and exhaustive brief furnished by counsel for the defendant will be found a classification and analysis of the cases bearing upon the subject, as well as a classification of the same showing the attitude of the different states with respect to conditional sales. It may be conceded that some other states have taken the same position as that maintained in the *Howland case*.

There being such a conflict in the authorities upon the subject, what position shall this court take with respect to this question which has now arisen for the first time in this state, and which has troubled the courts of other states so much in the past?

We have the reasoning of courts upon both sides of the question. Which seems to be the most sound and logical, and most consistent with the well settled principles of law, and particularly the principles governing the construction of contracts?

[2] It is the duty of courts to construe contracts so as to carry out the intention of the parties; and such intention must govern when it can be ascertained from the agreement, unless it is in

contravention of some established principle of law, or against public policy.

The validity of conditional sales is as fully recognized in this state perhaps as in any other, and if made in good faith they are as binding on the innocent purchaser from the vendee, as upon the vendee himself, unless they fall within the exception recognized in the case of *South Bend Iron Works v. Reedy,* 5 *Penn.* 361, 60 *Atl.* 698, which is hereafter referred to. There is nothing to show, and indeed it is not contended, that the contract before the court was not made in good faith, and there is no suggestion of fraud or collusion therein. Neither can it be said that the agreement is in contravention of any settled principle of law, or of public policy. While the courts of this state have not favored conditional sales, and have frankly said so, they have been compelled at the same time to say they are valid here, and must be so regarded by courts and juries too.

[3] Undoubtedly it was the intention of the parties to this contract that the vendee should sell the carriages in the regular course of his business, because the agreement provided that any or all of the goods *remaining on hand,* should in a certain event, be redelivered to the plaintiff. But it was also the clear intention of the parties that the title to the unsold carriages should remain in the plaintiff until paid for.

And it is equally clear that while the vendee was permitted to sell the carriages in due course of business, and deliver the same to the purchasers free and discharged from the condition, the parties did not intend that a creditor of the vendee should levy upon the property and sell it for his debts. The agreement expressly provided that if the vendee should suspend doing business or become financially embarrassed, his debt to the plaintiff should become immediately due, and any or all the goods remaining on hand be redelivered to the vendor.

Can it be said that such a contract was not valid and binding on the vendee and his creditors too? The effort and intention of the parties was not to deprive creditors of the right to seize the *property of the vendee* for the payment of his debts, but to save the *property of the vendor* from such seizure.

It is not difficult to understand the reason for such an agreement. In most cases of a like character the vendee would not be able to pay for the goods until he had sold them, and the understanding would therefore be that he might sell the property in due course of business and make payments therefor as he made the sales. That would be a matter of confidence reposed by the vendor in the vendee, and in that way only, in very many cases, could the vendee obtain possession of the property. But there is no reason to suppose that the parties to such a contract ever contemplated that the title to the property should be in the vendee so that his creditors might seize the same for the payment of his debts.

The Connecticut case to which we have already referred at some length, and which seems to us to be the clearest and most satisfactory exposition of the law upon the subject that we have found, is very similar in its facts to the one before us. Judge Loomis in that case presents the arguments on both sides of the question very fairly and strongly, and the conclusion reached by him commends itself to our minds as sound in principle, and entirely consistent with the well settled law governing the construction of contracts. In speaking of the reasons urged against the validity of the condition as against creditors of the vendee, the court said:

"But, conceding that the parties actually contemplated that there might be some sales made before actual payment of the price, yet the terms of the agreement, coupled with the conduct of the conditional vendee in pursuance of it, evince the perfect good faith and *bona fide* character of the transaction, so that it cannot be pronounced void on account of any wrong intent of the parties. If, therefore, the condition is to be held inoperative at all, the law must so declare it upon grounds of public policy, because it was calculated to give the one clothed with the possession a false credit, or else upon the ground that the plaintiffs through their contract are to be regarded as holding the possessor, or conditional vendee, out to the world as absolute owner.

"The objection as to giving false credit has undoubtedly much force, so that in many states the courts consider it as sufficient, but it applies with more or less strength, according to the

circumstances, to all cases of conditional sales where the vendee is clothed with full possession and apparent ownership; but, as the court says in *Forbes v. Marsh, supra*, in this state all these cases of conditional sales made *bona fide* have been held good against attaching creditors, and in reply to the objection we are considering it warns persons against putting faith in appearances except where the case comes within the rule of the vendor's retaining possession after the sale, and persons about to give faith on such appearances must make inquiry; and in this respect the language of our courts is similar to that of Campbell, J., in giving the opinion in *Ketchum v. Brennan, 35 Miss. 596*:—'A buyer must beware of purchasing from one who has not title; possession is not title.'

"The other objection, as to holding out the possessor to the world as absolute owner, is involved partly in the one just considered, except so far as the contract in question must be construed as contemplating or authorizing a sale by the possessor.

"Possession, with the *jus disponendi* added, has been regarded by many courts as a sufficient reason for declaring a contract colorable and fraudulent without regard to the real intent of the parties.

"We concede that there is much force in the reasoning supporting such a rule, but at the same time we must bear in mind the spirit and drift of our own decisions as they may have induced the making of such contracts. While it is true, as already stated, that no case identical with the present in the particular feature we are now considering has hitherto been before this court, yet the cases referred to clearly show that the controlling consideration has been the *bona fide* character of the transaction and the honest meaning and intent of the parties, without applying any technical rule of public policy, as in the cases of a retention of possession by the vendor after a sale.

"The courts of Massachusetts and Connecticut have always been in harmony on this vexed subject, and the principles hitherto adopted by us, if they do not logically compel, yet very naturally lead to the same result as already reached in that state, where

the title of the original vendor has been protected notwithstanding the objection we are considering."

The case of *South Bend Iron Works v. Reedy*, decided in this court, has been cited as an authority in support of the principle contended for by the defendant. In that case the plaintiff had sold to one H. D. Ruos, who was a retail dealer, a large quantity of agricultural implements to be by him sold within a certain territory, but the title to the goods to remain in plaintiff until paid for. The goods were shipped and delivered to the said Ruos, who sold to his brother Joseph A. Ruos, a large portion of the goods so shipped without removing them from the car in which they had been consigned to him. It was held that the case was "within the exception well recognized in cases of conditional sales"; but the court went no further than to hold "that Joseph A. Ruos *took title to the goods as an innocent holder for value without notice, and in the usual course of trade.*"

The right of an execution creditor to levy upon the goods as the property of the original vendee was not involved in that case, in fact or in principle, and the question is still an open one in this state.

It is not disputed that the contract involved in the present case constituted a valid and binding conditional sale between the vendor and vendee, and that as between them the title to the property remained in the vendor. But it is insisted that inasmuch as the sale was made to a retail dealer, the vendor could not avail himself of the condition, and maintain title to the property as against either an innocent purchaser for value, or an execution creditor of the vendee.

There can be no doubt about the intention of the parties to the contract in the present case. Unquestionably they intended that, as between themselves, the title to the property should remain in the seller until paid for. It may be very fairly presumed that the seller intended that the buyer should sell the property in the regular course of his business, and thereby become able to pay for the same. It may be just as fairly presumed that the seller intended that any one who purchased the property from the vendee in the regular course of his business, would have a good

title thereto.   This is all meant, or implied, in every conditional sale of goods to a retail dealer.   But, can the contract, by any fair and reasonable construction be held to mean that the creditors of the vendee could seize the property for the payment of his debts?   We think not.   There is, as we have said, a provision in the contract that clearly negatives such a meaning.   But, independent of that, we are of the opinion that such a construction would be unwarranted.   In order that the property might be liable for the debts of the vendee the title must have been in the vendee, which certainly could not be under the law as we understand it.   But it is not necessary for the protection of an innocent purchaser that title shall be in the vendee, because when a vendor makes a conditional sale to a retail dealer he agrees, not that the title to the property shall vest in the vendee, but that he will not assert his title against an innocent purchaser from such vendee, when he knew, and had impliedly agreed, that the property might be sold by the vendee in the regular course of his business.

That, we think, is what the contract before us means, and to that extent only is the vendor estopped from asserting title in himself, because to such extent only is the agreement inconsistent with his continued ownership.

Adopting the clear and concise language employed by Judge Loomis in *Lewis v. McCabe*, we say:

"In this case the condition that no title was to pass until payment is so clear, express and positive in its terms that we are inclined to give it full effect, and to construe what is afterward said of the understanding of the parties relative to a sale as the court in *Rogers v. Whitehouse* did, that is, not as authority to sell as his own (having nothing himself), but as authority simply to transfer the title of the plaintiff in the manner authorized."

The court are of the opinion that the Flint Wagon Works was, at the time the writ of replevin was issued, entitled to the possession of the goods and chattels replevied, and accordingly order and direct that judgment be entered in favor of the plaintiff for costs.