## ABEL BARRON *et a. versus* ISAAC DAVIS *et a.*

Pine timber, which has been put into Connecticut river and suffered to float down in such manner as to be liable to forfeiture under the statute of June 10, 1808, cannot be lawfully seized as forfeited, after the owner has regained the possession of it and has it in his custody.

Upon a single count in trover a plaintiff may recover the value of several articles taken and converted at several distinct times and places.

A, having by wrong taken the goods of B, and sold them to C, B brought an action against C, for the goods, which action was adjusted between the parties, and a certain sum received by B, of C, for the goods ; it was held that this adjustment was no bar to an action of trover by B, against A, for the same goods, although it might go to mitigate the damages.

Where, in trover, the conversion was alleged to have been made by the defendants, and another person, on whom the writ was not served, it was held, that the action was sustained by proof of a conversion by the defendants alone.

TROVER for masts, spars, and logs. The conversion was alleged to have been made by the two defendants, and another person upon whom the writ was not served.

The cause was tried here upon the general issue, at October term, 1827, when it appeared in evidence, that

the plaintiffs, for several years before the year 1825, turned into Connecticut river, at Dalton, large quantities of pine timber without being rafted, or under the immediate care and control of any person, or persons whatever, otherwise than that individuals were employed at certain places upon the river to collect it. The timber put into the river in the spring of 1824, floated down to Bellows' falls, at which place, and on the way from thence to Snow's mills, below, sundry hands were employed by the plaintiffs, to take up and secure that part of the timber which went over the falls. Some of the timber lodged on Wells' flats, between Bellows' falls and Snow's mills, a part of which was taken away by the plaintiffs in the June following ; and the residue was placed under the care of a person in the neighborhood, until there should be sufficient water to remove it with convenience. This timber lay upon the flats until the next October or November, when the person having the charge of it, collected it together, except one large piece which could not be removed, and secured it by a boom. The timber thus secured, and the large piece which could not be removed, remained in this situation until the next spring, when, in the month of March or April, on a rise of the water, the defendants took away the said large piece, and a great portion of the rest of the timber, and sold the same at Snow's mills, to one Safford. It also appeared, that, about the same time, the defendants brought two other rafts of timber to said mills, and there sold them, in which were pieces marked with the mark of the plaintiffs.

From evidence introduced on the part of the defendants, it appeared that the plaintiffs, having commenced an action against the said Safford for the timber which the defendants took from Wells' flats, and sold to him, on the 17th September, 1825, after the commencement of this suit, compromised with Safford the action which had been brought against him, and received $68, 37, in full for the timber.

Barron et a.
*v.*
Davis et a.

On behalf of the defendants, it was contended, 1st, That the timber had been put into the river under such circumstances that it was forfeited under the statute, entitled " an act regulating the mode of putting pine timber into Connecticut river."

2d, That with respect to the timber taken from Wells' flats, the adjustment made with Safford was a legal answer to this action.

3d, That there being only one count in the declaration the plaintiffs were not entitled in this action to recover for several distinct parcels of timber, taken at several distinct times and places.

4th, That the conversion being alleged in the declaration to have been made by the defendants and another person, proof of a conversion by the defendants alone, did not support the declaration.

But the court instructed the jury, that, although the timber might have been put into the river at Dalton, under such circumstances, that it might, while it was upon the river, or the banks thereof and not under the care of the owners or their agents, have been lawfully seized, as forfeited, under the statute, yet when the owners had regained the possession of it and put it under the custody of proper agents, it ceased to be liable to seizure.

The court further instructed the jury, that the adjustment made with Safford, with regard to the timber which the defendants had sold to him, was not a legal answer to this action with respect to that timber, but that the plaintiffs were still entitled to recover for the detention of it, and the difference which there might be between the value at the time it was taken by the defendants, and at the time the adjustment was made with Safford.

The court also instructed the jury, that the defendants were answerable in this action for any, and all conversions of the timber described in the declaration, which took place previously to the teste of the writ, and that

they were answerable for all conversions made by them
jointly, whether the other person who was alleged in the
declaration to have joined in the conversion, was in fact
connected with them or not.

Under these directions the jury returned a verdict for
the plaintiffs, and the defendants moved for a new trial,
on the ground that the jury were misdirected.

*J. H. Hubbard*, for the plaintiff.

It is contended, that the timber, while in the custody
of the agent of the plaintiffs at Wells' flats, was liable to
be seized by the defendants as forfeited.

The words of the statute are, " that—all pine timber
found floating in said Connecticut river, without being
rafted, or under the immediate care and control of some
person, or persons ; and also all pine timber which, by
being put into said river without having been rafted or
under such control, shall be found on the banks or mead-
ows adjoining said river, shall, and hereby is, forfeited
to any person who will take up the same." Under the
first part of this clause in the statute, the timber is not
forfeited unless it be found floating. If it should float
through this state into Massachusetts, it could not be
taken there under this act. It could be taken there on-
ly, if forfeited, under some act of that state.

It is not pretended that this timber was found floating
at all. It was found at rest, within the state of Vermont,
under the care and control of the owners.

Timber is not forfeited under the last part of this clause
in the statute, when found on the banks and meadows
adjoining the river if it had been before rafted, or if it be
under the care and control of the owner.

To be forfeited, under this part of the clause, it must
be found on the banks and meadows within this state,
because it cannot be contended that the act can operate
beyond the limits of the state.

If the timber is forfeited only to him who will seize the
same, then, if the original owner regain the possession,

he of course either holds it by his original title, or by virtue of taking it up as forfeited. He would certainly have as good a right to seize as any other person.

With respect to the settlement made with Safford, that can only go in mitigation of damages. If there has been a conversion, trover lies, although the goods converted have been restored to the true owner. The restoration of the goods only goes to mitigate the damages. 1 Chitty's Pl. 155 ; 6 Mod. 312, *Baldwin* v. *Cole* ; Buller's N. P. 46 ; Bacon's Ab. "Trover," D. ; Com. Dig. "action on the case for trover," E.

The defendants, in this case, took the mast logs, cut them up, and sold them as mill logs. They having no property in the timber could convey none to the purchaser. The owner might therefore bring trover against the purchaser to recover their value as mill logs. But the purchaser, instead of defending the action paid the value of the timber as mill logs. This can be no bar to a suit against the first taker. Suppose the defendants, instead of selling the logs had returned them to the plaintiffs. That would only go in mitigation of damages, according to all the authorities. The plaintiffs, then have a right to recover of the defendants the value of the masts, deducting the value of the logs returned.

As to the direction of the court to the jury, that the defendants were liable for any and all the conversions of the property described in the declaration, which took place before the commencement of the action, we think it clear, that several conversions may be given in evidence on the same count. In assumpsit for money had and received, several contracts may be given in evidence, on one count. It is equally proper, in trover, to give in evidence several conversions. It is not the practice in trover to insert more than one count. It would encumber the record without any possible benefit.

We have not been able to find a single declaration in trover containing more than one count.

We do not find the question raised and decided, but we find the practice to have been to give in evidence several conversions under one count without objection. 8 Taunt. 237 *Featherstonhough* v. *Johnson* ; 4 B. & C. 941, *Bloxam* v. *Sanders* ; 3 Wil. 332, *Rockham* v. *Jessup.*

Many more cases might be cited, but it is deemed unnecessary. It is contended that the verdict being according to the evidence, and the equity and justice of the case, and the objections merely technical, there ought to be judgment on the verdict, unless it can be shown by the defendants, by adjudged cases, that this cannot be done consistently with the law of the land.

*Mead*, and *H. Hubbard*, for the defendants.

The opinion of the court was delivered by the chief justice.

The first question, which this case presents for our decision, is, whether the timber, which the defendant took from Wells' flats, was there under such circumstances, that they might lawfully seize it as forfeited ?

We shall not stop to consider, what influence the circumstance that Wells' flats are within the limits of Vermont, if the fact be so, ought to have in the decision of this question, because the case does not state where those flats are, and because we think it clear, on another ground, that the timber was not, under the circumstances, liable to be seized as forfeited.

The title upon which the defendants rely, is founded upon a penal statute, and cannot prevail unless a fair interpretation of the statute will sanction its validity. Under the first part of the clause creating the forfeiture, in order to give a right to take up the timber it must be found floating, without being under the immediate care and control of any person. It is not enough that it may have been previously so floating, that it might have been lawfully taken up. If, at the time of the taking, it is under the control of the owner, or his agent, the taking is illegal.

Under the other part of the clause creating the forfeiture, timber found upon the banks or meadows adjoining the river, in consequence of its having been put into the river without having been rafted, or under the control of some person, seems, at first view to be, according to the letter of the statute, forfeited, even when so found in the custody of the owner. But is this the true meaning of the statute?

The timber liable to forfeiture, whether it be found floating or upon the shore, is forfeited to him who will *take up* the same. When an individual takes property which is in the custody and possession of another person, it is believed that in common parlance, he is never said to take it up. A person is said to take up property which is not in the possession of any other person. The words are used in that way, in this very instance, with respect to the timber found floating. So people, when they take possession of stray cattle, are said to take them up. The expression is used several times in the statute of February 9, 1791, entitled " an act relating to strays and lost goods," and the act in addition to it, passed in 1814, 1 N. H. Laws, 408, and 411.

It therefore seems to us, that the language of the statute, taken altogether in its common acceptation, *does not* warrant the seizure of timber in any case, when found in the custody of any person, whether it be so found upon the land or upon the water.

It is clear, that if the timber be taken up on the water, it must be taken *in delicto*, and when out of the custody and control of the owner. The moment he gains possession again the right to take up ceases, and the forfeiture is purged. And we cannot bring ourselves to believe that it was the intention of the legislature to prescribe a different rule, when the timber should be found on shore.

The timber is forfeited, only when found out of the custody of the owner, and under circumstances where it cannot be supposed that the owner is to be readily known

or found. This is certainly the case so long as the tim- <span>Barron et a.</span>
ber remains upon the water, and we cannot believe that <span>v.</span>
while the legislature did not see fit to authorize the seiz- <span>Davis et a.</span>
ure of the timber while in the custody of the owner, on
the water, it could have been the intention to subject it
to such a seizure on the land.

We are, therefore, of opinion, that the timber, at the
time it was taken by the defendants, was not liable to
be seized as forfeited, because it was in the custody and
under the control of the owners.

Another question, which is raised in this case, is,
whether the plaintiffs could be legally permitted to show
several distinct conversions of the property, there being
only one count in the declaration ?

In trespass, unless it be in cases where the plaintiff
declares with a *continuando*, or alleges the acts to have
been done on divers days and times, no more than one
distinct trespass can be proved under one count. 1 Chitty's Pl. 384 ; 2 ditto, 367, note S ; 1 Saund. 24, note 1.

But there is a great difference between trespass and
trover. Trespass lies only where there has been a taking of the goods of the plaintiff, with what the law denominates force. The very git of the action is the disturbance of the plaintiff's possession by force.

But in trover, the defendant is supposed to be in the
possession of the goods lawfully, by finding, and the git
of the action is an unlawful conversion of them, while so
in possession, to his own use. It is wholly immaterial
how or at what times the goods may have gone into the
possession of the defendant, because although he may
have obtained possession of them by wrong, that wrong
is waived, and the plaintiff seeks redress only for the
wrong done by the defendant, in exercising a dominion
over the goods, after they came to his possession, which
was inconsistent with the plaintiff's right of possession
and property. This exercise of dominion over the property may consist of various acts done at various times,

Barron et a.
v.
Davis et a.

the whole of which constitute the injury of which the owner complains. There is no rule of law, which requires that the particular acts which go to constitute the conversion should be specified, but it is sufficient to allege, generally, that the defendant converted the goods to his own use, and evidence of any acts of the defendant at any time previous to the commencement of the suit, inconsistent with the plaintiff's rights and property in the goods, is competent evidence to maintain the allegation. There are cases, in which the law, if it were otherwise, would be very inconvenient, if not absurd. The inconvenience of a rule requiring a plaintiff to specify the various acts that may go to constitute a conversion, may be very distinctly seen by supposing such a rule must be applied in a case like that of *Wilson* v. *Read*, 3 Johns. 175, which was trover for a hogshead of rum, brought by one tenant in common against another, and where the conversion of the rum consisted in a sale by retail.

With regard to the settlement with Safford, we think that the answer given by the counsel of the plaintiffs, is decisive. Such a settlement amounts to nothing more than a restoration of the goods, which goes only in mitigation of the damages.

Nor is the objection well founded, that the conversion is alleged to have been made by the defendants and another person. For in an action in form, *ex delicto*, it is well settled, that one defendant may be acquitted, and a verdict taken against others. 3 East, 62, *Govet* v. *Radnidge, et a.*

We are therefore of opinion that there must be

*Judgment on the verdict.*