# STEVENS *v.* EAMES & *a.*

Trover will lie against the receiptor of property attached, whether the action be brought by the sheriff to whom the receipt is given, or in his name, for the benefit of those whose rights are to be affected.

Where the receiptor of property has conveyed the same by mortgage to pay his own debts, a demand and refusal are not necessary to be shown in order to sustain an action of trover for the property. The conveyance of the property is the conversion.

Where two receipt for property, and one of them converts it with the knowledge of the other, who does not interfere to prevent the conversion, and a subsequent demand upon him who did not convert it, and a non-compliance

with the demand are shown; the evidence is competent to show a joint conversion.

If the sheriff, to whom a receipt for property is given, assent to the conversion of the same by the receiptor to pay the receiptor's debt, he thereby waives his claim upon the receipt. But after the property has been mortgaged by the receiptor, without the knowledge of the sheriff, and the mortgagee proceeds to sell the same under the mortgage, the sheriff will not lose his rights on the receipt by acting as auctioneer for the mortgagee; there being nothing in the facts proved that tends to show collusion between them, or any suspicion of · secrecy or unfairness, or intention of waiving his rights.

TROVER, for three horses, one wagon, and three harnesses. The writ was dated March 17th, 1849. The defendants pleaded, severally, the general issue.

In support of his action, the plaintiff introduced in evidence the following receipt, and proved its execution. .

" Received of Herod Stevens, deputy sheriff of the county of Grafton, for safe keeping, the following property: three horses, of the value of $150; one gig wagon, of the value of $25; three harnesses, of the value of $40; all of the above property attached as the property of James H. Eames, on a writ in favor of Benjamin F. Neal, returnable at Haverhill, April term, Grafton county, which I agree to deliver to said Stevens, or any other proper officer, on demand, in good condition, as they now are, free from expense to said Stevens.

(Signed,)  ·  J. H. EAMES,
            CHARLES M. TUTTLE.

" Littleton, September 30th, 1848."

A demand of the property was made by the plaintiff upon Tuttle, on the 23d of February, 1849. No demand was proved upon Eames; but it appeared that on the 22d of November, 1848, he mortgaged the property, together with sundry other articles, to the Lancaster Bank, to secure his note to said bank for seven hundred dollars, bearing even date with the mortgage. This mortgage was duly executed and sworn to by Eames on his part, and signed and sworn to by George C. Cossit, cashier of the bank, on the part of the bank, and by no one else in behalf of the bank. Neither Cossit nor any of the officers of the bank knew of the attachment till after the execution of the mortgage.

48 *

The defendants excepted to the competency of the mortgage as evidence, on the ground that it was not legally executed on the part of the bank. The property receipted for, and the other property mortgaged, remained in the possession of Eames from the time the receipt was given until the 10th of March, 1849, when it was all sold by the bank, by virtue of said mortgage; the bank having previously taken legal steps to foreclose the mortgage and advertise the property for sale.

On the day of the sale, Cossit, 'the cashier, called on the plaintiff to obtain his services as auctioneer in selling the mortgaged property. Stevens at first objected, saying that perhaps he might thereby lose some of his rights on the receipt; whereupon Cossit told him that he did not care about the attachment; that he was going to sell the property on the mortgage, and that if Stevens would not act as auctioneer for him, he would get some one else. Stevens at last consented to act as auctioneer, and proceeded to sell the property in that capacity, following the directions of Cossit, — Cossit keeping the account of sales, taking the money, and ordering what articles should be put up. Stevens never had the property in his possession or under his control, except as he received it from the hands of Cossit and struck it off to the bidders.

It appeared, further, that Tuttle never had possession of the property, or undertook to exercise any control over it.

A verdict was taken by consent, for the plaintiff, on which it was agreed that judgment should be entered, or the verdict set aside and judgment entered for the defendants, — or judgment entered on the verdict against one of the defendants, and judgment in favor of the other defendant, according to the opinion of the Court upon the whole case.

*Rand*, for Tuttle. In trover against several defendants all cannot be found guilty on the same count without proof of a joint conversion by all. 1 Chitty's Pl. 86. There was no conversion on the part of Tuttle. *Bissel* v. *Huntington*, 2 N. H. Rep. 144. The law does not imply a conversion from a demand and refusal. *White* v. *Phelps*, 12 N. H. Rep. 385.

2. Cossit was not authorized to make mortgages on behalf of the bank. Rev. Stat. chap. 140, § 43 ; Rev. Stat. chap. 146, § 14.

3. Stevens waived all his rights to the property by selling it on the mortgage. As to the general rights of a sheriff and receiptor, we refer to *Poole* v. *Symonds*, 1 N. H. Rep. 294; *Odiorne* v. *Colley*, 2 N. H. Rep. 70 ; *Whitney* v. *Farwell*, 10 N. H. Rep. 12, 13 ; *Young* v. *Walker*, 12 N. H. Rep. 502; *Dunklee* v. *Fales*, 5 N. H. Rep. 527.

To the point that if one yields his rights he is afterwards estopped from setting them up, we refer to *Runlet* v. *Otis*, 2 N. H. Rep. 167; *Morse* v. *Child*, 6 N. H. Rep. 521; *Clement* v. *Clement*, 8 N. H. Rep. 472; *Thompson* v. *Sanborn*, 11 N. H. Rep. 206 ; *Eaton* v. *Rice*, 8 N. H. Rep. 381.

*Bellows*, for Eames. If the plaintiff assented to the proceedings of the bank, he has lost all claim to the property. His course was such as to deprive the defendants of all power over the property, and consequently he can himself have no claim either upon the property or upon the defendants. By his acts he lost all lien which he had acquired by virtue of the attachment.

*Bingham*, for the plaintiff. Trover lies against a receiptor of property attached, when there has been a demand and refusal or neglect to comply with the demand. *Cargill* v. *Webb*, 10 N. H. Rep. 199; *Webb* v. *Steele*, 13 N. H. Rep. 231.

The mortgage made to the bank by Eames, whether valid or not, was a wrongful assumption of the right to dispose of the goods, and clearly a conversion on his part, which renders him liable in this action, without a demand. 1 Chitty's Pl. 154, 155, 157. But the cashier was the agent of the bank, and authorized by them to execute the mortgage on their part, or, at least, he assumes to be authorized by the bank, and the bank subsequently ratified his act. A corporation generally contracts by its authorized agents, and Cossit was the authorized agent of the bank.

The acquiescence on the part of Tuttle in the conduct of Eames, suffering him to retain possession of the property and to mortgage the same, and the mortgage to be foreclosed without objection thereto, might well be considered a conversion on his part, so as to convict him in this action. But his acknowledgment, in the receipt, of having received the property, and his failure to produce the same when demanded, charges him beyond question. *Morrison* v. *Blodgett*, 8 N. H. Rep. 238; and cases before cited.

The assistance Stevens rendered, in acting as auctioneer on the sale of the property, could not affect his rights in the matter. He had not any control over the property, nor did he assume any. He asserted all the rights over the property he now claims to have. The property had been previously mortgaged and delivered to the bank by Eames, who had possession, without the knowledge on the part of the bank of the existence of the attachment. Hence the property had passed to the bank irrecoverably, and Stevens, as regards the bank, had no rights to waive. *Dunklee* v. *Fales*, 5 N. H. Rep. 528.

If Stevens, at the time of the sale on the mortgage, had any rights possible for him to waive, he did not waive them, for he disclosed fully the situation of the matter.

EASTMAN, J. It is well settled, that trover will lie against the receiptor of property attached, whether the action be brought by the sheriff to whom the receipt is given, or in his name, for the benefit of those whose rights depend upon it. *Webb* v. *Steele, et al.*, 13 N. H. Rep. 230; *Cargill* v. *Webb*, 10 N. H. Rep. 199; *Baker* v. *Knapp, et al.*, 6 Johns. Rep. 195; *Hotchkiss* v. *McVicar*, 12 Johns. Rep. 407; 2 Saunders, 47 (*a.*)

A question is raised as to the legality of the mortgage from Eames to the Bank; it being contended that Cossit, the cashier, had no authority to execute the mortgage on behalf of the bank. But we need not take time to examine this point, inasmuch as we are of opinion that whether Cossit had authority to execute the mortgage or not, there is abundant evidence showing a conversion by Eames. The property was in his hands, and to

secure his own debt to the bank he made a mortgage of this and other property, and swore to it. To his deed of the property he added the sanctity of his oath, and he cannot now be permitted to say that he has not converted it. This appears to be quite clear upon the authorities. An abuse of possession, originally legal, or a breach of trust under which property is placed in a defendant's hands, by disposing of it is a conversion. *Murray et al.* v. *Burling*, 10 Johns. Rep. 172; *Reid* v. *Colcock*, 1 Nott & McCord's Rep. 592; *Hutchinson* v. *Bobo*, 1 Bailey's Rep. 546; *Bristol* v. *Burt*, 7 Johns. Rep. 254; *Ripley* v. *Dolbier*, 6 Shepl. Rep. 382; *Baldwin* v. *Cole*, 6 Mod. Rep. 212; *McCombie* v. *Davies*, 6 East. Rep. 540; *Bloxam, et al.* v. *Hubbard*, 5 East. 407; *Lovell* v. *Martin, et al.* 4 Taunton, 799. And when a person intrusted with the goods of another, puts them into the hands of a third person, contrary to orders, it is a conversion. *Syeds* v. *Hay*, 4 Term. Rep. 264. So, also, is the driving a hired horse a greater distance than is agreed, or in a different direction. *Wheelock* v. *Wheelwright*, 5 Mass. Rep. 104; *Homer* v. *Thwing*, 3 Pick. Rep. 492; *Hart* v. *Skinner*, 16 Vermont Rep. 138. And in *Kennedy* v. *Strong*, 14 Johns. Rep. 128, it was held, that if a factor pledge the goods of his principal for his own debt, it is a conversion. The pledging of the goods, says Chief Justice Thompson, is the wrongful act which constitutes the conversion.

Whenever the taking is tortious, or an actual conversion is shown, a demand and refusal are unnecessary. *Farrington* v. *Payne*, 15 Johns. Rep. 431; *Woodbury* v. *Long*, 8 Pick. Rep. 543; *Tompkins* v. *Haile*, 3 Wendell's Rep. 406; *Jewett* v. *Partridge*, 3 Fairfield's Rep. 243; *Dursell* v. *Masher*, 8 Johns. Rep. 445. A conversion by Eames being shown, no demand upon him was necessary to be proved.

A few days before the suit was instituted a demand was made upon Tuttle. It was then not in his power to make a literal compliance by returning the property, unless he could procure it from the purchasers at the auction sale. He, however, could have answered the demand by paying the money. This was not done, and no compliance with the demand was made. Here

was evidence competent to charge him in an action of trover; for although a demand and refusal are not in themselves a conversion, yet they are evidence upon which to found a conversion. *Cargill* v. *Webb*, 10 N. H. Rep. 199. Non-compliance is a virtual refusal; and where there is a demand and refusal or non-compliance unexplained, it is sufficient to show a conversion.

But it is said that it is necessary to show a joint conversion by the defendants; and there are authorities that sustain that view of the question. *Forbes* v. *Marsh & Sedgwick*, 15 Conn. Rep. 384; 1 Chitty's Pl. 86. The action of trover, however, is in form *ex delicto*, and one defendant may be acquitted and a verdict taken against others. *Govet* v. *Radnidge, et al.* 3 East's Rep. 62; *Moon* v. *Eldred*, 3 Hill's (N. Y.) Rep. 104; *Barron et al.* v. *Davies, et al.* 4 N. H. Rep. 338. In the last case cited, it was held, that, although the conversion was alleged to have been made by the defendants and another person, on whom the writ was not served, yet that the action might be sustained by proof of a conversion by the defendants alone. But where the action is brought against joint bailees, a conversion by all should be shown. *Mitchell* v. *Williams*, 4 Hill's (N. Y.) Rep. 13. The tenor of the authorities would seem to be, that where the action is against the defendants jointly, evidence of a demand and refusal upon them at different times is sufficient to charge them all; but there must be evidence of some kind against all.

But, whatever may be the precise doctrine upon this point, there was evidence in this case competent to show a joint conversion. The fact that Tuttle, who was the reliable man upon the receipt, permitted the property to remain in the possession and under the direction of Eames, without attempting to exercise any control over it himself; the conveyance of the property by Eames to the bank, and the subsequent sale of it at auction — facts which must have been known to Tuttle, but which he did not interfere to prevent — and the demand and non-compliance on the part of Tuttle, were competent and sufficient to show an assent by Tuttle to the conversion by Eames.

The verdict, then, in favor of the plaintiff is correct, unless he

Stevens *v.* Eames.

can be regarded as assenting to the sale by the bank, and so far relinquishing his claim to the property as to lose his lien by virtue of the attachment. The maxim, that silence gives consent, is one of very general application in the ordinary transactions of life, and which is frequently recognized in the discussion of legal principles. The assent, however, to have the effect of an acquiescence, must exhibit some act of the mind amounting to the voluntary relinquishment of a right. To be bound by the presumed assent, the party must be so situated as not only to be able to assert his rights, but not to assert them would be a want of good faith on his part. *Allen* v. *McKeen,* 1 Sumner's Rep. 217, 314; *Melen* v. *Andrews,* 1 M. & M. 336. Had Stevens been present at the time when Eames mortgaged the property to the bank, and failed to make known the attachment, he might have prejudiced his rights so far as not only to lose all lien upon the property, but also all claim on the receipt. But when he was called upon to act as auctioneer, Eames had parted with his right to the property by the mortgage to the bank, and the mortgage had been foreclosed; so that the receiptors had then no control over the property. He moreover disclosed the situation of the attachment and did not acquiesce in what had been done by Eames and the bank. Finding that the property would be sold, notwithstanding the attachment, he consented to act as auctioneer. His course made no difference with the determination of Cossit in selling the property, and it would have been sold had he not acted as auctioneer. Under the circumstances, we can regard Stevens simply as the agent or servant of Cossit. If there were anything disclosed in the case, that tended to raise a suspicion of collusion between Stevens and Cossit, or any unfairness on the part of Stevens, or any acquiescence by him in what had been done, it might be different. But we discover nothing that can charge him with dishonesty, or with any intent to waive his rights. There must, therefore, be

*Judgment on the verdict.*