CAMAC (MURPHY v.). See Case No. 9,948.

---

## Case No. 2,330.

### CAMBIOSO v. MAFFET.

[2 Wash. C. C. 98.][1]

Circuit Court, D. Pennsylvania. Oct. Term, 1807.

CONTRACT IN FRAUD OF CUSTOMS LAWS—VALIDITY—ENFORCEMENT—FOREIGNER TRADING IN THE UNITED STATES — EVIDENCE OF ACCOUNT — BOOKS.

1. C. and M. were jointly interested in vessels and cargoes, not as partners, but as joint owners in each adventure. The cargoes were shipped to the United States, C. being an alien, and M. a citizen; the vessels being registered by M. as American, and the cargoes appearing to be his property, and entered as such. This action was brought to recover a balance of account arising out of these transactions. The cargoes were subject to foreign duties, and the transaction, being a fraud on the laws of impost and tonnage, cannot be brought into our courts for the purpose of enforcing a demand arising out of it.

[Cited in Dutilh v. Coursault, Case No. 4,206.]

2. A foreigner is not always bound to take notice of the revenue laws of a country to which he does not belong; and a firm and final contract, made in his own or a foreign country, is valid, although it may be intended to violate the revenue laws of a country with the property obtained from him by such contract, he not being acquainted with the intended fraud. Aliter, if the contract is to be completed in, or has a view to the violation of the laws of the country where it is to be executed.

3. A foreigner trading to the United States, is bound to know our revenue laws, and his ignorance of them will not exempt him from their influence. The property of Cambioso in the cargoes cannot be distinguished from his ownership of the vessels; as those cargoes were subject to foreign duties, being imported in vessels not entitled to an American register.

4. If any goods imported in these vessels were not subject to duties, their proceeds may be recovered; as the United States were not injured by their importation.

5. A deposition, in which the witness swore that he had examined, and believes an account against him, to which he refers, to be right, because the clerk who made it out would not have stated it incorrectly, although he has never compared it with the books of his creditor, from which it was taken; may be read in evidence. The account is not proved to be acknowledged by this deposition, but goes to the jury, who will decide whether the deposition is sufficient proof of the items contained in it.

[Cited in U. S. v. 146,650 Clapboards, Case No. 15,935.]

6. The books of the parties to this transaction would not be evidence for either of them, unless supported by other evidence.

[See Field v. Moulson, Case No. 4,770; Leveringe v. Dayton, Id. 8,288.]

This was an issue sent by the commissioners of bankrupts, to try whether any, and what sum was due to the plaintiff from the bankrupt. Maffet's deposition was offered by the plaintiff, and was objected to on two grounds; first, that in right of his wife, the daughter of Cambioso, he was entitled to a part of Cambioso's estate, and therefore the recovery, in this case, would be to his advantage. Second; that he had not released his interest in the allowance to be made him out of the estate in the hands of the assignees. But a release being produced to the executors of Cambioso, of all interest in that estate; and it appearing that his evidence goes to establish the plaintiff's claim, of course, and to diminish the fund, the objection was given up by the counsel. The case appeared from his deposition, (so far as it is important to the points of law cited by the counsel,) to be shortly this. Maffet, a citizen of the United States, and Cambioso, an alien, residing at Curacoa, were jointly concerned in a number of vessels and their cargoes; not as general partners, but in each particular adventure. Those vessels were, nevertheless, all registered as American bottoms, as the sole property of Maffet. The cargoes were also all, ostensibly, the property of Maffet, and entered as such. This business was carried on for a considerable length of time, and a large balance is now claimed by the plaintiffs upon the vessels, and another balance upon the cargoes. To the deposition of Maffet, is annexed the account upon which their claim is founded, and which Maffet says he has examined and believes to be right, but allowing that he has

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

not compared it either with Cambioso's books, or with his own. In his cross-examination he says, he believes the account to be correct, because he can see no reason why the clerk of the plaintiffs should draw it off otherwise. The offering this account to the jury was objected to by the defendant's counsel, because it cannot be considered as an acknowledged account; since this deposition was given subsequent to the bankruptcy of Maffet, when he had no interest in his estate, or in the dispute. That the evidence of Maffet speaks of it only to the best of his memory, and rests his belief of its correctness on the supposed integrity of the clerk. It was contended, that such evidence would not be sufficient to authenticate a deed, or bond, or settled account, in case of the authenticity of the instrument being questioned; neither is it sufficient to authenticate this account, so as to make it evidence to go to the jury. Another reason assigned was, that the evidence of Maffet was inferior to his books, and those of Cambioso, which might have been produced.

J. Ingersoll and Mr. Rawle, for plaintiff.
Hare & Dallas, for defendant.

Before WASHINGTON, Circuit Justice, and PETERS, District Judge.

WASHINGTON, Circuit Justice. The argument of the defendant's counsel proceeds upon two mistakes; first, that this account is offered as a settled account, which I do not understand to be the case, and which certainly it could not be. The account is not of itself evidence of any debt; it is a mere exhibition of the items of the debt, which must rest upon, and can only be supported by other evidence. If the witness in this case had sworn positively that, to his perfect recollection, every item in this account was correct, it is clear, and it is admitted, that such testimony would establish the demand, unless such evidence was contradicted, or the witness discredited. In such a case, no objection could be made to the account being read, as containing the items of the demand: but still the evidence, not the account, would be the foundation of that demand. But the witness does not swear positively; yet this is no objection to the offering the account, and it will be for the jury to say, if the evidence to prove the items in it is sufficient to satisfy them. Again, the witness is not only not positive in his evidence, but he assigns, it is said, a bad reason for believing it to be correct. This goes still further to weaken his evidence; but the evidence is equally competent, though not equally strong. These considerations may be properly urged to the jury, who are judges of the weight of evidence, and of the credit of witnesses; but they do not affect the admissibility of the evidence. The second mistake is, that the books of Maffet and of Cambioso, are better evidence than the testimony of a witness, to establish this account, and therefore such inferior evidence is inadmissible. I think quite otherwise. Cambioso's books would not be evidence at all for him, nor Maffet's for the defendants, unless supported by other testimony; and though they might be evidence against them, yet they are not of a superior dignity to a witness proving the same fact. This case is very unlike that put at the bar, of a bond, which ought not to be proved on non est factum, by evidence similar to what is given by Maffet in this case. In that, the paper itself is evidence of the debt, and the witness is only examined to authenticate and verify the paper, so that it may be read. Then, if the witness should say that he believed the bond to have been executed by the obligor, because of his confidence of the correctness of those who appear as witnesses to the execution, the court would lay its hands on the paper, and say it was not sufficiently authenticated to make it evidence to be laid before the jury. But in this case, the account is not evidence that a shilling is due. The witness is not called upon to authenticate the paper, but to prove the truth and correctness of the items in it. I do not rely upon the evidence of Maffet as the acknowledgment of the party, because it was made after he had ceased to have an interest in the estate, but as the evidence of a witness of whose credit the jury is to judge.

The defendant's counsel, after endeavoring to impeach the credit of Maffet, and to show the insufficiency of his evidence to establish the account, contended, that the whole of the demand arising from the transactions in violation of the revenue laws of the United States, cannot be enforced in any of the courts of the United States. They read the different revenue laws, to show that a vessel cannot obtain an American register so as to exempt her cargo from the payment of alien duties, where a foreigner is partly interested in the vessel; and that the American registers for these vessels were obtained by the perjury of Maffet. See 2 Acts Cong. pp. 131, 144; 1 Acts Cong. p. 342, § 36; Id. p. 251, § 2; also the following cases, to prove the general principles: [Maybin v. Conlon; Duncason v. M'Lure; Murgatroyd v. M'Lure] 4 Dall. [4 U. S.] 299, 308, 342; 5 Term R. 594. That if it were necessary to bring home to a foreigner a knowledge of the laws of the foreign country, Cambioso was bound by the knowledge of Maffet, his partner and agent. 3 Term R. 454.

For the plaintiff, it was answered, that the principle does not apply to foreigners, unless they are proved to have known of the laws they have violated, and that they have been so violated: that it should appear that Cambioso knew of the revenue laws of the United States, and also that Maffet

had registered the vessels as his sole property. This appears to have been relied upon in all the cases on this subject. 3 Term R. 454; 4 Term R. 46. That if the objection should apply to the balance claimed on the vessels, still the claim is separable (3 Vezey, Jr. 373); and the objection is inapplicable to the balance claimed on the cargoes, unless express notice can be proved; for, though an alien cannot be a part owner of an American registered vessel, yet he violates no law by being concerned with a citizen in the cargoes carried in an American registered vessel, for he pays no higher duties in such a case than a citizen; all depending on the character of the vessel, not of the person. In the third place, it was contended, that if the law be against the plaintiff, as to the balance claimed on account of the vessels and cargoes, subject to pay duties; still it does not apply to a part of the plaintiff's demand, on those portions of the cargo which paid no duties at all.

WASHINGTON, Circuit Justice, delivered the charge of the court. The only part of the case which the court will notice, is the point of law which has been raised; as to the weight of the testimony, or credit of the witness, the jury will judge.

The facts on which this point rests are few. Cambioso and Maffet were jointly interested in a number of vessels, and in the cargoes shipped on board of them to this country, upon which transactions distinct balances are stated in favour of Cambioso, and are now claimed by his executors. Maffet was an American citizen residing in Philadelphia, and Cambioso an alien, residing in Curacoa. Under the laws of the United States, nothing could protect these parties from the payment of alien duties, on the vessels or on the cargoes, (except such parts as were not dutiable at all,) but an American register. This, however, could not be obtained, in consequence of Cambioso's being an alien. If obtained, it must have been by a concealment of his interest, and by the perjury of him in whose favour the register was granted. Yet it appears that such registry was obtained by Maffet, as the sole owner of these vessels; and in consequence of such concealment and perjury, a number of mercantile adventures were carried on by Maffet and Cambioso, on which this claim is founded, for considerable balances in favour of the latter. The defendant insists that this claim cannot be enforced in the courts of the United States; because those courts cannot lend their aid to establish a demand founded upon a violation of the laws of the United States. This principle of law may not, in a moral point of view, destroy the right of the plaintiff; but it goes to defeat his remedy in the tribunals of this country. The soundness of the principle, as a general one, is acknowledged by the plaintiff's counsel; but it is contended to be inapplicable to foreigners, who are not bound to take notice of the revenue laws of a foreign country, unless proof is brought home to them of a knowledge of those laws, and of every fact necessary to apprize them of the breach of them. But we do not understand how a knowledge or ignorance of the foreign law can be important; for if a foreigner is bound, in any case, to take notice of such laws, it is no defence for him that in fact he did not know them. It was his duty to know them, and his ignorance shall not excuse him. If he is not bound to take notice of them, then it is of no consequence whether he did or did not know them. In some cases, a foreigner is not bound to take notice of foreign revenue laws. For if he makes a firm and final contract, completed in his own or a foreign country, it is nothing to him whether a use may, or may not be made of the contract in violation of the revenue laws of a foreign country. In the case of Holman v. Johnson, Cowp. 341, the sale was completed in France, and the vendor was, in no respect, concerned or aiding in the illicit use intended to be made of the goods, though he knew of such intention. Not so as to a citizen, who, though the contract be complete, yet, if he be knowingly instrumental to a breach of the laws of his own country, he cannot have the aid of those laws against which he has offended. As if he sell goods for the purpose of their being smuggled; lends money to a person at a gaming-table, for the purpose of enabling the borrower to violate the law against gaming; or the like. But if the contract of the foreigner is to be completed in, or has a view to its execution in a foreign country, and is repugnant to the laws of that country, he is bound to take notice of them. If so, how much stronger is the case of a foreign merchant, owning property and carrying on trade in another country, by means unauthorized by, and in violation of the laws of that country? In such case, he is not only presumed to know, but is bound to take notice of them. He contracts and does business under the faith and sanction of those laws; and shall he not be bound by them? Cambioso then knew, or ought to have known, the laws of the United States, as to the registering of vessels; that he could not be exempt from the payment of alien duties, unless the vessels were registered; and that such register, if obtained, must be so by practising a fraud upon the laws. Is it possible that he, a partner with Maffet in these vessels and cargoes, and acting with him in the whole business, could be ignorant that he was not burdened with the payment of alien duties? But if this could be conceived, yet the illegal acts, in the profits of which he is now seeking to participate, were done by his partner or agent; for whose conduct he is respon-

sible, though his ignorance of the law could be proved.

The court has been called upon to distinguish between the claim on account of the vessels, and of the cargces. But for what purpose, as to such parts of the cargo as were liable to duties? Being concerned with Maffet in the vessels which carried the cargoes, the cargoes could not be exempt from alien duties, unless the vessels had American registers. But he knew that they could not legally obtain such registry. If so, he knew also, that the cargoes must be subject to the payment of alien duties. Could he be ignorant that the cargoes were not charged with such duties? This is equally as improbable, as that he should not know that the vessels were subject to such duties. Upon the whole, then, it is clear, that if proof were necessary to be brought home to Cambioso, of his knowledge that these vessels had obtained the character of American vessels, by a fraud upon the laws of the United States; such proof is furnished by the nature of the transactions themselves. But whether he had such knowledge in fact or not, the frauds were committed by his partner or agent, by which he must be affected: and as to the revenue laws themselves, he was bound to take notice of them. As to any goods which may have been imported in those vessels into this country, which were free of duties, they are subject to a different consideration. Such importation was not a violation of the revenue laws. As Cambioso gained nothing, and the United States lost nothing, by a concealment of his interest in those goods, or in the vessels; there was no such fraud as would vitiate his demand for any balance due on their account. It was contended that Cambioso, by sending to Maffet documents respecting the cargoes, as belonging to Maffet, enabled him to commit perjury in the oath which he took at entering them, and that thus participating in this immorality, he ought not to recover. But it by no means appears that the oath taken by Maffet on entering such goods as his sole property, was even false, much less that it was perjury. We do not observe the oath or any part of the law requires that all the partners should be named. The object of the law is to insure the payment of duties, and not to disclose the names of the owners of the property. The adoption of the doctrine contended for, might be extensively mischievous to dormant partners. But even admit that a false oath was taken by Maffet, by means of the papers sent to him; we do not perceive how this can affect the right of Cambioso to recover the value of these goods sold by Maffet, for which he was justly indebted to Cambioso. Cambioso violated no law of the United States, in concealing his name as part owner of these goods.

Verdict for defendant.