FIRST NATIONAL BANK OF WEBSTER vs. JAMES R. ALTON.

Hartford Dist., March T., 1891. ANDREWS, C. J., LOOMIS, SEYMOUR, TORRANCE and FENN, Js.

M executed and gave to W the following instrument, receiving from him the property mentioned in it:—"March 4, 1889. Received of W one bay horse and one express wagon, for which I promise to pay him or his order one hundred and fifty dollars with interest five months from date, at First Nat. Bank, Webster. Said property to remain the absolute property of W until paid in full by me. And I hereby agree not to dispose of said property and to keep it in good condition as it now is. And should said horse die before said sum is fully paid I agree to pay all sums due thereon, and should said property be returned to or taken back by W, I agree that all payments made thereon may be retained by W for the use of said property." Held not to be a negotiable promissory note.

It is necessary to such a note that the amount stated in it should be payable absolutely and at all events. Here the contract gave M the right to return the property to W, in which case he would not be liable to pay what remained unpaid of the amount.

The instrument was endorsed by W and for his accommodation by the defendant, and the plaintiff discounted it for W, who received the proceeds. The plaintiffs in making the loan relied upon the endorsement of the defendant, and supposed the instrument to be a negotiable note, as did also W and the defendant, and the latter believed himself liable upon his indorsement upon failure of W to pay, and had stated to the plaintiffs that he understood himself to be so liable upon like paper shortly before discounted by them for W on his endorsement. Held that there was no legal implication that the money was loaned to the defendant and at his request delivered to W, or that the loan was made to W on the defendant's request and promise to pay if he did not.

[Argued March 3d—decided April 20th, 1891.]

ACTION against the defendant as indorser of a negotiable promissory note; brought to the Superior Court in Windham County, and tried to the court before *Prentice, J.* Facts found and judgment rendered for the defendant and appeal by the plaintiffs. The case is fully stated in the opinion.

*W. S. Gould* (of Massachusetts) and *C. E. Searls,* for the appellants.

1. The character of the instrument in suit is to be determined by the laws of this state, and not by those of Massachusetts. The finding is silent as to the place of endorsement, but the note was made in Connecticut, and the defendant resides here, and presumptively the instrument was endorsed by the defendant and delivered to Walker in Connecticut. It was therefore the intention of the defendant that his liability as endorser should be governed by our laws. 1 Daniels on Negotiable Instruments, § 899; *Greathead* v. *Walton,* 40 Conn., 226. There are no decisions by this court which are conclusive authorities on the question now being considered, but the reasoning of the court in a case hereafter cited is in the line of the plaintiff's contention. The question at issue is, therefore, open for adjudication in the light of principle, and in accordance with the trend of authority.

2. The instrument in suit is a promissory note. " A promissory note is (1) a promise to pay money, (2) at a certain time, (3) to a person named, (4) absolutely and at all events. The payment must not rest upon any contingency except the failure of the general personal credit of the person drawing or negotiating the same." 3 Kent Com., 12th ed., 92. The instrument in suit has the first, second and third of these essential qualities; has it the fourth also? To determine this question we must examine the legal significance of the words " absolutely and at all events." The bearing of these words is best found by transposing the words of the definition. . Money is to be paid absolutely and at all events, according to the other conditions named in the note. These words are intended to exclude from the promise to pay money any contingency, condition, stipulation or reser-

vation, which, if incorporated, would affect, if not destroy, the liability of the maker to pay money, in the amount, at the time, and to the person named. If the liability of the maker to pay money, according to the other terms of the promise, is preserved, free from contingency, condition, stipulation or reservation, the character of the promise is fixed as a negotiable promise, and comes under the rules of the law merchant. In applying this rule the most obvious inquiry is—Can the instrument contain any language other than that which is required to convey the information required by the rule, and still retain its character of negotiable paper? And a further inquiry is—If it may contain other words and other expressions, what other words or expressions can it contain, without losing its character of negotiability? A negotiable promissory note may contain language not required to express the information suggested by the rule, and still retain its character of negotiable paper. *Cota* v. *Buck*, 7 Met., 588; *Towne* v. *Rice*, 122 Mass., 67; *Perry* v. *Bigelow*, 128 Mass., 129; *Collins* v. *Bradbury*, 64 Maine, 37; *Riker* v. *A. & W. Sprague Mfg. Co.*, 14 R. Isl., 402; *Protection Ins. Co.* v. *Bill*, 31 Conn., 537. The authorities seem to be conclusive in favor of the proposition, that the presence of the negotiable promise fixes the character of the instrument as negotiable paper, and that words and expressions, or even detailed and elaborate agreements, are not sufficient to destroy the effect of the negotiable promise, and that such an instrument is, in judicial construction, a negotiable promissory note with a memorandum attached, and not a memorandum agreement with a useless form attached. *Towne* v. *Rice*, 122 Mass., 67; *Collins* v. *Bradbury*, 64 Maine, 37; *Arnold* v. *Rock River Valley R. R. Co.*, 5 Duer., 207; *Heard* v. *Dubuque Co. Bank*, 8 Neb., 16; *Newton Wagon Co.* v. *Diers*, 10 id., 284; *Willoughby* v. *Comstock*, 3 Hill, 389; *Hodges* v. *Shuler*, 22 N. York, 114; *Mott* v. *Havana Nat. Bank*, 22 Hun, 354; *Hosstater* v. *Wilson*, 36 Barb., 307; *Protection Ins. Co.* v. *Bill*, 31 Conn., 534; *Heryford* v. *Davis*, 102 U. S. R., 235; *Arkansas Land & Cattle Co.* v.

*Mann,* 130 id., 69; *Chicago Railway Equipment Co.* v. *Merchants' Nat. Bank,* 136 id., 268.

3. The facts, as found, warrant the application of the doctrine of equitable estoppel to any attempt of the defendant to claim that the facts found do not justify such inference of law, or that he did not draw such order or make such promise. *Preston* v. *Mann,* 25 Conn., 118; *Stevens* v. *Dennett,* 51 N. Hamp., 324; *Horn* v. *Cole,* id., 287; *Hodges* v. *Shuler,* 24 Barb., 68, 82; *Audenreid* v. *Betteley,* 5 Allen, 382; *Pikard* v. *Sears,* 6 Ad. & El., 474. These cases establish the following propositions:—(1.) One who has influenced the conduct of another to the disadvantage of the latter cannot deny his liability to reimburse the person suffering by reason of such influence. (2.) There need not be any actual design that the representation should be acted upon. (3.) There need be no intention to defraud or deceive. (4.) Equitable estoppels are intended to promote and effectuate equity. The liberal views entertained by this court in the late case of *Mansfield* v. *Lynch,* 59 Conn., 321, as to the law governing the rights of the holder of money paid under a mistake of law, when in equity and good conscience he should not retain the sum so paid, warrants us in pressing with confidence for the application of the law of equitable estoppel under like circumstances, where the standing in court of the parties only is reversed. We say further that the plaintiff has the right to insert above the name of the defendant the contract as the defendant understood it when he endorsed the instrument, and we predicate our claim, not upon any technicalities of reasoning, but upon the following simple proposition:—that the name of the defendant as written upon the back of this instrument, and of the series of which it is one, was intended to convey, and was understood by the plaintiffs as conveying, the following request:—"Let Mr. Walker have $150, and I will pay if he does not." The name conveyed, and was intended to convey, and was understood to convey, this idea.

*W. S. B. Hopkins,* (of Massachusetts,) for the appellee.

FENN, J. In March, 1889, one William H. Walker carried to the plaintiffs' bank an instrument in writing, which read as follows :—

" $150. So. Woodstock, Ct., March 4, 1889. Received of W. H. Walker, this day, one bay horse, Vinton horse, one express wagon, for which I promise to pay said Walker or order one hundred and fifty dollars, five months from date, at First Nat. Bank, Webster, with interest at     per cent. Said property to be and remain the entire and absolute property of said Walker until paid in full by me. And I hereby agree not to sell or dispose of, and to keep said property in good order and condition as the same now is. And should said horse die before said sum is fully paid, I hereby agree to pay all sums due thereon. And should said property be returned to or taken back by said Walker, I agree that all payments made thereon may be retained by said Walker for the use of said property. CHARLES H. MOORE."

This instrument was indorsed by Walker, and by the defendant, and Walker requested the plaintiffs to discount the same. The plaintiffs did so, crediting the proceeds to Walker. They relied largely upon the strength of the defendant's endorsement. The defendant had endorsed it at Walker's request, solely for his accommodation, and without consideration. All the parties, plaintiffs, defendant and Walker, supposed the instrument to be a negotiable promissory note. The plaintiffs had previously discounted similar instruments for Walker, bearing the defendant's endorsement, and prior to January 1st, 1889, one of the plaintiffs' directors asked the defendant for a statement as to his financial condition and the amount of his endorsements for Walker. The defendant gave the information, and said that he understood that he was holden to pay in case Walker did not. In June, 1889, Walker fled, making no provision for the payment of his indebtedness to the plaintiffs, who, when the instrument became due, caused it to be protested, and gave the defendant notice. Nothing appears in the finding in reference to Moore, or to the subsequent history of the property described in the instrument. The de-

fendant in the court below had judgment, and the plaintiffs appeal.

The plaintiffs' counsel, in their brief, say that the essential question in the case is, whether the instrument in suit is a promissory note; and in this statement we concur. They then quote from 3 Kent's Commentaries, 12th ed., 92, the following :—" A promissory note is (1) a promise to pay money, (2) at a certain time, (3) to a person named, (4) absolutely and at all events." Without stopping to consider whether an instrument might not contain all these elements and still fail to be a promissory note, we will come directly to the question whether the instrument declared on does contain them.

Nor will it be necessary to look at more than the last essential. Is there a promise to pay " absolutely, and at all events ? " We think not. The transaction evidenced by the instrument is clearly of the nature of what has so often been the subject of discussion and consideration in this court, a conditional sale, or, in other words, an executory contract for sale. To hold it otherwise would be inconsistent with a score of cases in this jurisdiction, among which may be cited *Forbes* v. *Marsh*, 15 Conn., 384; *Tomlinson* v. *Roberts*, 25 id., 477; *Cragin* v. *Coe*, 29 id., 51; *Lucas* v. *Birdsey*, 41 id., 357; *Hine* v. *Roberts*, 48 id., 6. The *New Haven Wire Co. Cases*, 57 Conn., 352, may also be cited.

But it is not only a conditional sale, the condition being expressed in the same instrument with the promise to pay, and not apart from it as in most of the cases cited above, but the option to determine as to whether the sale shall become absolute is not, as in the case of *Appleton* v. *Library Corporation*, 53 Conn., 4, and the very recent case of *Beach's Appeal from Commissioners*, 58 Conn., 464, exclusively in the vendor, but, as in *Hine* v. *Roberts*, 48 id., 267, and *Loomis* v. *Bragg*, 50 id., 228, at the option of both. Indeed this option is very much more clearly expressed in the present case than in that of *Hine* v. *Roberts*. The language is—" Should said property be returned to or taken back by said Walker, I agree that all payments made there-

on may be retained by said Walker for the use of said property." Why provide what the rule should be in case of a return, if the vendee had no option to return, or what should be paid as compensation for the use of the property if the promise to pay the full value was absolute. If it were necessary to argue this matter further, the argument is already made for us in the opinion of the court, in *Hine* v. *Roberts*, which we here adopt; and the case of *Protection Insurance Co.* v. *Bill*, 31 Conn., 534, which is the case in this jurisdiction mainly cited and relied on by the plaintiffs, becomes an absolute authority against their position, since it does not appear upon the face of the instrument in suit that the maker's promise will, at any time, be absolutely enforceable, or that the event on which the duty of payment depends is one over which the payee or holder will have entire control.

It was the claim of the plaintiffs, contested by the defendant, that the character of the instrument in suit is to be determined by the laws of Connecticut and not by those of Massachusetts. The claim was manifestly made to avoid the effect, as an authority, of *Sloan* v. *McCarty*, 134 Mass., 245. We need not decide this question, for since the law of this state is so clearly against the plaintiffs' contention, it is unnecessary to determine whether that of Massachusetts is even more so. We need only add that we have carefully examined all the cases cited in the plaintiffs' able and carefully prepared brief, and that none of them in any sense conflict with the conclusions which we have reached. Those authorities were mainly cited to show that a negotiable promissory note may contain language not required to express the vital essentials of such an instrument and still retain its character as negotiable paper, and they abundantly establish such proposition.

Another claim made by the plaintiffs and overruled by the court below was that the law, upon the facts found, implied that the proceeds of the discount of the instrument credited to Walker, were either money loaned to the defendant and at his request delivered to Walker, or money loaned

to Walker upon the defendant's request and his promise to pay the same when due if not then paid by Walker, and that the plaintiffs might write over the defendant's endorsement the contract between the parties. And in support of this claim counsel especially rely upon "the liberal views entertained by this court in the late case of *Mansfield* v. *Lynch,* 59 Conn., 321, as to the law governing the right of the holder of money paid under a mistake of law, when, in equity and good conscience, he should return the sum so paid." Now, in response, it seems to us that there is little analogy between the case before us and that of *Mansfield* v. *Lynch;* that in order to do what the plaintiffs ask we should be obliged, by one of the fictions of law, to invent facts which do not exist, for the sake of applying thereto principles of doubtful equity; that if the law implied that the money credited to Walker was loaned to the defendant, or to Walker upon the defendant's promise to pay when due if not then paid by Walker, (a promise not in writing, to answer for the debt, default, or miscarriage of another), in either case, the implication would be contrary to the truth; that to allow the plaintiffs to write over the defendant's name such a contract, never made, would be to carry the invention one step further; that to hold, because the parties were mutually mistaken in the legal effect of the real transaction, justice would be subserved by the imputation in its place of a fictitious one, would be going further than we are aware that any court has yet gone, and beyond what it seems to us proper or right or safe to do.

There is no error in the judgment complained of.

In this opinion the other judges concurred.