JAMES R. ALTON *vs.* FIRST NATIONAL BANK OF WEBSTER.

Worcester. October 5, 1892. — October 22, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Money had and received — Mistake — Action — Subrogation.*

Money paid to a bank by the indorser of an instrument, which has been discounted by the bank, and which both supposed erroneously was a negotiable promissory note, cannot be recovered back; and it makes no difference that the indorser, upon payment, was not subrogated to the security mentioned in the instrument.

CONTRACT, for money had and received. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on agreed facts, in substance as follows.

In 1889 one William Walker carried, and on previous occasions had carried, to the defendant bank, which was located at Webster, a number of instruments in writing indorsed in blank by the plaintiff and himself, a copy of one of which is as follows: " $150. So. Woodstock, Ct., March 4, 1889. Received of W. H. Walker, this day, one bay horse, Vinton horse, one express wagon, for which I promise to pay said Walker or order one hundred and fifty dollars, five months from date, at First Nat. Bank, Webster, with interest at     per cent. Said property to be and remain the entire and absolute property of said Walker until paid in full by me. And I hereby agree not to sell or dispose of and to keep said property in good order and condition, as the same now is. And should said horse die before said sum is fully paid I hereby agree to pay all sums due thereon. And should said property be returned to or taken back by said Walker, I agree that all payments made thereon may be retained by said Walker for the use of said property. Charles H. Moore. Witness, I. L. Edmunds." The amount of such instruments was about $4,400.

Walker then supposed the instruments to be negotiable promissory notes, and the defendant, understanding and believing them to be negotiable promissory notes, discounted them for Walker, and credited the proceeds thereof to his account upon their books. The defendant in discounting them relied largely upon the strength of the plaintiff's indorsement. There was no want of certainty on the part of either Walker, the defendant, or the plaintiff as to the actual contents of the several papers. The plaintiff, who lived in Thompson, Connecticut, about four miles from Webster, had indorsed the instruments at Walker's request, and solely for his accommodation, supposing them to be promissory notes. He received no consideration for his indorsements. The plaintiff believed, at the time of his indorsements, that, if he had to pay the amount of the instruments, he could hold the property described therein as collateral security for the payment. The plaintiff indorsed these instruments understanding that it was Walker's purpose to raise money by obtaining their discount, and that it was to aid him in this that the indorsements were requested. He did not at first know where the discounts were to be obtained, but prior to January 1, 1889, he was informed by one of its directors that the defendant bank was discounting for Walker notes with the plaintiff's indorsement, and was asked by him for a statement as to his financial condition and the amount of his indorsements for Walker; and the plaintiff, in reply, stated his financial condition, and that he thought that he was then indorser for Walker to the amount of $2,200 or $2,300; and he also stated that he understood that he was liable to pay in case Walker did not.

In June, 1889, Walker disappeared, making no provision for the payment of his indebtedness to the defendant. The defendant caused the instruments, as they became due, to be protested, of which the plaintiff had notice. After Walker's departure, the plaintiff deposited with the defendant bank $1,300, directing that it be applied to the payment of the instruments upon which he was indorser, as they should mature. Of the money so deposited $1,061 was applied as directed. The plaintiff, desiring to obtain possession of certain of these instruments before they were due, went to the defendant bank and got three of his own notes discounted, and paid the proceeds thereof, and a

certain small sum besides, amounting to $710.20, to the defendant, for an equal amount of these instruments not yet due, and the same were thereupon delivered to him by the defendant. At the time the plaintiff deposited the $1,300 with directions as above stated, and at the time he paid the $710.20 for the instruments not yet due, he still supposed them to be negotiable promissory notes, and that he was liable on them as indorser. Afterwards he was advised otherwise, and refused to pay any more of the instruments, whereupon the defendant bank brought suit against him on one of these instruments in Connecticut, which was decided in his favor. See *First National Bank of Webster* v. *Alton*, 60 Conn. 402.

This action is brought to recover back the money so received by the bank, namely, the sums of $1,061 and $710.20, making in all the sum of $1,771.20; and it is agreed that the declaration may be taken as if it specified these two sums and the aggregate of them.

*W. S. B. Hopkins*, (*F. B. Smith* with him,) for the plaintiff.

*F. P. Goulding*, for the defendant.

HOLMES, J.  Lord Westbury sometimes is supposed to have taken a distinction as to the effect of a mistake of law according to whether the mistaken principle is general or special. *Cooper* v. *Phibbs*, L. R. 2 H. L. 149, 170. But in the often quoted passage of his judgment he only meant that certain words, such as ownership, marriage, settlement, etc., import both a conclusion of law and facts justifying it, so that, when asserted without explanation of what the facts relied on are, they assert the existence of facts sufficient to justify the conclusion, and a mistake induced by such an assertion is a mistake of fact. In the case before him the mistake was one concerning the ownership of a fishery, and was induced by a general statement of a certain person that he owned it. L. R. 2 H. L. 164. *Windram* v. *French*, 151 Mass. 547, 551.

We will assume, merely for the purposes of this case, without expressing any opinion upon it either way, that a mistake of law of any kind, when the mistaken notion is made the avowed basis of a transaction, may be a ground of relief under some circumstances. We take it that the money sought to be recovered was understood by the plaintiff and the defendant to be paid and

(

received under the belief that the plaintiff was bound to pay it by his indorsement of the instrument set out in the agreed facts, and we also will assume that this belief was erroneous, as has been decided in Connecticut. *First National Bank of Webster* v. *Alton*, 60 Conn. 402. See *Sloan* v. *McCarty*, 134 Mass. 245.

But the plaintiff meant to bind himself in the way in which he supposed he had done, and must be taken to have known that the defendant meant to have the security of his obligation before advancing, as it did, on the strength of it. If the case stopped there, the plaintiff hardly would have the boldness to contend that he could recover back what he had paid, and what he had meant to be understood and had been understood to promise, simply because, if he had found out the law soon enough, he might have backed out of his undertaking, and of what he was bound in honor to do. The plaintiff says that the case does not stop there, because, if the parties had been right in their view of the law, the plaintiff would have had the benefit of the security mentioned in the instrument, whereas now he has not.

If it be true that the plaintiff was not subrogated to the security upon payment, we are of opinion that it makes no difference as between the plaintiff and the defendant. The right of a surety to subrogation, like his right to contribution, is a collateral matter, and no part of his principal contract by which he makes himself surety. The existence of that right is not the implied foundation of the principal contract. The defendant was not concerned or bound to inquire what the expectations of the plaintiff might be as against a third person. It was for the plaintiff to obtain or preserve his rights as best he might. *Aiken* v. *Short*, 1 H. & N. 210, 215.

So far as this case is concerned it does not matter whether the mistake was a mistake of fact or one of law. For even a common mistake as to a fact, but for the supposed existence of which the plaintiff would not have come into the transaction, as the defendant knew, would not warrant a recovery, when, as here, the fact was a matter equally open for the inquiry and judgment of both parties, and the defendant had a right to assume that the plaintiff relied wholly on his own means of information. *Hecht* v. *Batcheller*, 147 Mass. 335. *Carter* v. *Boehm*, 3 Burr. 1905 1910. *Smith* v. *Hughes*, L. R. 6 Q. B. 597.

There is no ground, however, for the suggestion that this was a mistake of fact in such a sense as to help the plaintiff. The plaintiff's indorsement was in the hands of the accommodated party until delivered in Massachusetts, and the payment was made in Massachusetts, so that the transaction was a Massachusetts transaction throughout. The plaintiff's obligation to know the Massachusetts law, whatever the measure of that obligation may be, was not affected by the accident of his being personally out of the jurisdiction. See *Hill* v. *Chase*, 143 Mass. 129. Probably the measure of the plaintiff's obligation would be the same in the case of a contract made in Connecticut, if, on any ground, its validity or effect depended on the law of Massachusetts. *Cambioso* v. *Maffett*, 2 Wash. C. C. 98, 104. *Merchants' Bank* v. *Spalding*, 5 Selden, 53, 62. *Graves* v. *Johnson*, 156 Mass. 211.  *Judgment for defendant affirmed.*