ant's motion to set aside the service of the summons had been granted by the City Court, and reversed by the Appellate Term of the Supreme Court, judgment was taken by default.

Thereupon, with a desire to do away with further litigation, plaintiff promised to delay issuing execution until the money owing on the advertising contract might be collected, and the defendant undertook to collect the amount as soon as possible. This is confirmed by the fact that plaintiff actually did withhold execution until the amount had been collected. Then, upon attempting to make the payment, the parties could not agree upon the state of their account, and the controversy was reopened. Thereafter the present motion was made, and the delay in making it is excused by the efforts of the parties to settle without litigation.

[1] Appellant contends that the papers submitted to the clerk of the court upon entering the judgment did not show that there was a default. It is true that the judgment roll did not show a default, but the affidavit of the managing clerk of plaintiff's attorneys contains allegations quite sufficient to prove that fact.

[2] Appellant's contention that the judgment entered upon default was premature is of doubtful validity, as it is questionable whether the form of order entered upon the reversal was adequate to preserve its rights to appear and plead.

[3] The defendant, however, besides a general denial, sets up a counterclaim against the plaintiff, and alleges that there is an outstanding assignment of plaintiff's cause of action, thus showing meritorious grounds of defense.

The order denying the motion to open the default is reversed, with $10 costs and disbursements, and the motion granted, upon payment to plaintiff of full costs of this action to date, less the costs and disbursements of this appeal. All concur.

---

SPRINGS et al. v. HANOVER NAT. BANK OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   June 2, 1911.)

1. BANKS AND BANKING (§ 186*)—DRAFTS—COLLECTION—FORGED COLLATERAL.
   Plaintiffs agreed to accept and sell a shipment of cotton and to advance 85 per cent. of its value pending sale on the shipper's draft for that amount. A draft with a bill of lading and insurance policy attached, covering 600 bales of cotton and drawn on plaintiffs to the credit of the shipper's home bank for $39,000, was delivered to such bank and discounted, and after indorsement was sent to defendant bank for collection. The draft contained no reference to the papers attached to it and on presentation to plaintiffs was accepted and paid to defendant bank and the proceeds promptly remitted to the bank of discount, after which plaintiffs discovered that the bills of lading were forgeries and the shippers had been adjudicated bankrupt. Held, that neither the bank of discount nor defendant was under any obligation, before discounting or presenting the draft, to determine the validity of the papers securing it, nor did they, by indorsing the draft before presentment for acceptance, guarantee the validity of the bill of lading attached as security, the burden resting on plaintiff to determine the validity of the bill before accepting the draft, and, there being no defect in the draft

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

itself, plaintiff could not recover the money from defendant bank as money paid under a mistake of fact.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 186.*]

2. BILLS AND NOTES (§ 74*)—DRAFTS—ACCEPTANCE—EFFECT.

Where drawees of certain drafts to which a forged bill of lading were attached, to which the draft did not refer, accepted the draft on presentment, the acceptance admitted the existence of the drawers, the genuineness of the signature, and their authority to draw as provided by Negotiable Instruments Law (Consol. Laws 1909, c. 38) § 112.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 125–141; Dec. Dig. § 74.*]

3. BANKS AND BANKING (§ 186*)—DRAFTS—COLLECTION—FORGED COLLATERALS.

Where drafts, to which forged bills of lading for cotton were attached, were deposited in the drawer's home bank for discount and the bank, after discounting the draft in good faith, sent it to defendant bank for collection, and plaintiffs, the drawees, accepted the draft, and the proceeds were remitted by defendant to the bank of discount before the forgery was discovered, defendant was but the agent of the discounting bank, which was a bona fide holder for value, and defendant having received payment, and paid over the proceeds to such bank without knowledge that the bill of lading was spurious was freed from liability.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 186.*]

Appeal from Trial Term, New York County.

Action by Richard A. Springs and others against the Hanover National Bank of the City of New York. From a judgment setting aside a verdict in favor of plaintiffs and granting defendant a new trial (127 N. Y. Supp. 178), plaintiffs appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John R. Abney, for appellants.
Charles F. Brown, for respondent.

McLAUGHLIN, J. Action to recover $39,000 paid by the plaintiffs to defendant under an alleged mistake of fact. At the conclusion of the trial the court directed a verdict for the plaintiffs, which, on motion of the defendant, he subsequently set aside and ordered a new trial. The plaintiffs appeal.

At the trial it appeared that the plaintiffs were engaged in business in the city of New York; that the defendant is a national bank located in such city; that the First National Bank of Decatur is also a national bank located at Decatur, Ala.; that Knight, Yancey & Co. was a firm which, prior to being adjudicated a bankrupt, carried on business in buying and selling cotton in the state of Alabama; that, prior to the transaction hereafter referred to, they had done business with the Bank of Decatur, and also with the plaintiffs; that in January, 1910, they inquired of the plaintiffs upon what terms they could handle cotton shipped to them at New York, to which the plaintiffs replied, giving terms. Nothing further, however, seems to have been done until March 29, 1910, when they telegraphed the plaintiffs that they were consigning cotton to them for delivery and asked advice as to ship-

ping and drawing instructions. The plaintiffs replied by telegraph that they could ship as they thought best, and could draw for 85 per cent. of the value of the cotton, insuring until it was warehoused. On the same day Knight, Yancey & Co. telegraphed the plaintiffs:

"Have shipped you today 600 bales care Independent Stores. Drew $39,-000,"

—and then drew the following draft upon them:

"Knight, Yancey & Co., Cotton, Decatur, Ala., U. S. A.
"March 29, 1910, 19   *   *   *   No. 4059.
"Pay to the order of W. B. Shackelford, Cashier, ($39,000) thirty-nine thousand dollars, for value received, and charge same to account of
"Knight, Yancey & Co.
"To Springs & Co., New York, N. Y."

This draft, on the same day, they presented for discount to the Decatur Bank, with what purported to be bills of lading and certificates of insurance for 600 bales of cotton attached. The draft was discounted by the Decatur Bank, and the amount of it, less the usual rate of exchange, credited to the account of Knight, Yancey & Co. The Decatur Bank indorsed the draft on the same day and sent it, with the papers attached, to the defendant for collection and credit, with a letter which gave the names of the drawees and the amount of the draft. The only reference to the papers attached was "P/A." The letter, with the inclosures as stated therein, was received by the defendant on the 31st of March. It indorsed upon the draft, "Hanover National Bank, paid March 31, 1910, New York," and then presented it to the plaintiffs, who accepted the same and gave the defendant a check for the amount of it, retaining the draft and papers attached. The check was paid, and the amount of it credited by the Hanover Bank to the Decatur Bank, and the same was drawn out by or in the ordinary course of business on or before April 4th following. Some time thereafter, plaintiffs ascertained that the bills of lading were forgeries. They then demanded of the defendant the repayment of the $39,000, on the ground that the money had been paid under a mistake of fact. The demand was not complied with, and thereupon this action was brought to recover such sum.

[1] Upon the foregoing facts I am clearly of the opinion that the plaintiffs were not entitled to recover. The draft was concededly drawn by Knight, Yancey & Co. The amount was correct, and, under the previous arrangement with Knight, Yancey & Co., the plaintiffs accepted and paid it. It was not a payment under a mistake of fact. Neither the Decatur Bank nor the Hanover Bank indorsed or in any way stamped the bills of lading which were drawn to the order of Knight, Yancey & Co. and indorsed by them in blank. The draft itself contained no reference to the bills of lading, and it is not claimed either the Decatur Bank or the defendant had any knowledge that the bills of lading were not genuine, or that either bank made any representation upon the subject to induce the plaintiffs to make the payment. The Decatur Bank received the draft in the usual course of business as a bank of discount and paid the full amount of it, less the exchange, to Knight, Yancey & Co., and it is not even suggested that

any act of it or the defendant (except the indorsement of the draft in the usual course of business) operated to the prejudice of the plaintiffs or prevented them from making an earlier discovery of the forgeries. On the contrary, it appears that Knight, Yancey & Co. had arranged with the plaintiffs to accept the draft, and that they did accept it upon the representation of Knight, Yancey & Co. that the cotton mentioned in the bills of lading had been shipped to their firm for sale under the previous arrangement.

It may well be that the bills of lading gave some credit to the draft beyond what was created by the supposed pecuniary standing of Knight, Yancey & Co.; but they were not a part of the draft, were not referred to in it or in the acceptance, and, so far as the plaintiffs were concerned, they were nothing more or less than collateral security accompanying the draft. It was for the plaintiffs alone to determine, before they accepted the draft, the validity and value of such security. There was no obligation upon either the Decatur Bank or the defendant to do this. The Decatur Bank in discounting the draft, and the defendant in presenting it for payment, did not guarantee the genuineness of the bills of lading attached to it as collateral security.

The case in principle cannot be distinguished from Goetz v. Bank of Kansas City, 119 U. S. 551, 7 Sup. Ct. 318, 30 L. Ed. 515; Hoffman v. Bank of Milwaukee, 79 U. S. 181, 20 L. Ed. 366; Robinson v. Reynolds, 2 Q. B. 196; Thiedemann v. Goldschmidt, 1 De Gex F. & J. 4; Woods v. Thiedemann, 1 Hurl. & C. 478; Leather v. Simpson, 11 L. R. Eq. 398; First National Bank of Detroit v. Burkham, 32 Mich. 328; Alton v. First National Bank of Webster, 157 Mass. 341, 32 N. E. 228, 18 L. R. A. 144, 34 Am. St. Rep. 285; Craig v. Sibbett, 15 Pa. 238; 2 Daniel, Negotiable Instruments, § 1734d.

In the Hoffman Case the bank had discounted drafts drawn by parties at Milwaukee on Hoffman & Co., commission merchants of Philadelphia, to which were attached bills of lading purporting to represent shipments of flour. Hoffman & Co. accepted and paid the drafts. The bills of lading turned out to be forgeries, and Hoffman & Co. sued the bank to recover the money paid, claiming such payment was made under a mistake of fact. It was held that the money paid was not a payment by mistake; the court saying:

"Money paid under a mistake of facts, it is said, may be recovered back as having been paid without consideration; but the decisive answer to that suggestion, as applied to the case before the court, is that money paid, as in this case, by the acceptor of a bill of exchange to the payee of the same, or to a subsequent indorsee in discharge of his legal obligation as such, is not a payment by mistake, nor without consideration, unless it be shown that the instrument was fraudulent on its inception, or that the consideration was illegal, or that the facts and circumstances which impeached the transaction, as between the acceptor and the drawer, were known to the payee or subsequent indorsee at the time he became the holder of the instrument. * * * Attempt is made in argument to show that the plaintiffs accepted the bills of exchange upon the faith and security of the bills of lading attached to the same at the time the bills of exchange were discounted by the defendants. Suppose it was so, which is not satisfactorily proved, still it is not perceived that the concession, if made, would benefit the plaintiffs, as the bills of exchange are in the usual form and contain no reference whatever to the bills of lading, and it is not pretended that the defendants had any knowledge or

intimation that the bills of lading were not genuine, nor is it pretended that they made any representation upon the subject to induce plaintiffs to 'contract any such liability."

In the Goetz Case, Goetz and another were engaged in the business of buying and selling hides at Milwaukee, Wis. One Dubois was a dealer in hides at Kansas City, Mo. Dubois telegraphed Goetz asking for what they could sell 400 hides and how much they would advance on a bill of lading of the shipment. Goetz replied giving the market price and stating they would pay a draft for two-thirds value, bill of lading attached. This was followed by a letter in which Goetz said they would sell all the hides Dubois might ship to the market at Milwaukee. On this understanding Dubois drew five drafts, to each of which bills of lading and invoices were attached. The bills of lading purported to be issued by the Chicago & Alton Railroad Company, stating it had received the hides, numbers and estimated weight, and marked "to shipper's order, notify Goetz & Lenning, Milwaukee, Wis." The notice purported to give the weight of the hides and their price. The drafts were made payable to the cashier of the Bank of Kansas City and were cashed as drawn, the bank paying the full value, less rate of exchange, and the amount of the discount was passed to the credit of Dubois and checked out by him in the ordinary course of business. The drafts, after they were discounted, were sent by the bank to its correspondent, indorsed by it for collection, and the invoices were indorsed in the same way. The bills of lading were indorsed by Dubois. The signatures to the bills of lading proved to be forgeries, and Goetz refused to pay the fifth draft, upon which suit was brought; Goetz counterclaiming for the amount of the four previous drafts paid, alleging the same were paid by mistake of fact. It was held the bank was entitled to recover; the court saying:

"Under these circumstances, it is not surprising that, when the drafts on the merchants in Milwaukee were presented for discount, the bank made no inquiry as to the genuineness of the bills of lading attached to them. A bank in discounting commercial paper does not guarantee the genuineness of a document attached to it as collateral security. Bills of lading attached to drafts drawn as in the present case are merely security for the payment of the drafts. The indorsement by the bank on the invoices accompanying some of the bills for collection created no responsibility on the part of the bank. It implied no guarantee that the bills of lading were genuine. It imported nothing more than that the goods which the bills of lading stated had been shipped were to be held for payment of the drafts if the drafts were not paid by the drawees, and that the bank transferred them only for that purpose. If the drafts should be paid, the drawees were to take the goods. To hold such indorsement to be a warranty would create great embarrassment in the use of bills of lading as collateral to commercial paper against which they are drawn."

It would make this opinion too long to quote from the other authorities; but it is sufficient to say they are equally as strong as the two quoted from, that money paid under facts similar to those here involved cannot be recovered. But see Hannay et al. v. Guaranty Trust Company of New York, 187 Fed. 686, recently decided by the Circuit Court of the United States for the Southern District of New York.

[2] The draft in question, as we have already seen, made no reference to the bills of lading. When the plaintiffs accepted it, they thereby became obligated to pay according to the acceptance. The acceptance admitted the existence of Knight, Yancey & Co., the genuineness of their signatures, as well as their capacity and authority to draw the instrument. Negotiable Instruments Law, § 112.

[3] There is another view which it seems to me prevents plaintiffs from recovering. The defendant, in presenting the draft for payment, acted as the agent of the Decatur Bank, which was a bona fide holder for value. When the defendant received payment of the draft, it had no knowledge that the bills of lading attached were spurious, or that the bills did not represent actual cotton delivered. Having received the payment and paid the same over to the Decatur Bank before it had any knowledge that the bills of lading were spurious freed it from liability. Bank of America v. Waydell, 187 N. Y. 115, 79 N. E. 857; National Park Bank v. Seaboard Bank, 114 N. Y. 28, 20 N. E. 632, 11 Am. St. Rep. 612.

If the foregoing views be correct, then it follows that the court did not err in setting aside the verdict in favor of the plaintiffs and granting a new trial, because on the facts presented a verdict should have been directed for the defendant.

The order appealed from, therefore, is affirmed, with costs and disbursements. All concur.